407 So.2d 530 (1981)
Marlon Joe PACE and Glendle Ray Sones
v.
STATE of Mississippi.
No. 52805.
Supreme Court of Mississippi.
November 25, 1981.
Rehearing Denied January 6, 1982.
*531 Fielding L. Wright, James H. Heidelberg, Pascagoula, William P. Wessler, Donald F. Rose, Gulfport, for appellants.
Bill Allain, Atty. Gen. by Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and SUGG and HAWKINS, JJ.
Sones, Rehearing Denied January 6, 1982.
SUGG, Justice, for the Court:
In the Circuit Court of Harrison County First Judicial District, Marlon Joe Pace and Glendle Ray Sones were convicted of burglary. Pace was sentenced to seven years imprisonment, the maximum term for burglary, under the habitual criminal statute, section 99-19-81 Mississippi Code Annotated (Supp. 1981). Sones was sentenced to life imprisonment under the habitual criminal statute, section 99-19-83 Mississippi Code Annotated (Supp. 1981). Both Sones and Pace appeal, assigning several errors which merit discussion.
After receiving a call from a confidential informant that the J.C. Rich Food Store in Gulfport was going to be burglarized, officers from the Gulfport Police Department and the Mississippi Highway Patrol made a stake-out of the business. With permission of the store owner, two officers were locked inside the store on the evening of Saturday, November 17, 1979. Nothing unusual occurred that night. The stake-out was repeated on the next night, November 18, 1979.
At approximately 8:15 p.m. the officers inside the store were notified by officers outside the building that two men were getting out of a Ford Pinto car. The officers then heard beating noises at the rear of the store. After the noise stopped, two men came into the store.
The officers identified themselves as police. At that point Sones said, "Mickey, its me, Glenn, don't shoot me, I don't have a gun." The men dropped a brace and bit and screwdriver, were placed under arrest, and handcuffed. Officer Mickey Ladner testified that, as they were leading Sones and Pace out of the building, Sones stated, "Mickey, we didn't even need tools in here, we had all the tools we needed in here." A matchbook with the telephone number of a *532 waffle house restaurant written on it was found in the pocket of Sones. A police unit went to the waffle house and observed two women come out of the restaurant and get into the Pinto, drive past the grocery store, and stop about a block away, where it was intercepted by the police. One of the women in the car was recognized as a companion of Pace and Sones; the other identified herself as Sones' sister.
Sones testified at trial that he and Pace were approached about the burglary by a man named Jack Smith, whom they met for the first time about a week before the burglary. Sones testified that he and Pace initially refused any involvement in the burglary, but agreed to do it at the fourth meeting with Smith. Sones testified that Smith told them what was in the store and brought them tools to use in the burglary. According to Sones, Smith was to get a third of anything that they took. Sones testified that no one else knew about the burglary except Smith, Sones, and Pace.
Sones and Pace first assign as error the trial court's failure to acquit them of the burglary charge. The appellants contend that because they raised the affirmative defense of entrapment which the state did not rebut, they were entitled to an acquittal. We are of the opinion that Pace did not raise the entrapment defense because he never admitted participation in the burglary. Pace pled not guilty to the burglary charge but did not testify at trial. Sones testified and admitted his involvement in the burglary. We have held that when a defendant denies the act with which he is charged, he cannot claim that he was entrapped. McCormick v. State, 279 So.2d 596 (Miss. 1973). Thus, the entrapment defense was not available for appellant Pace.
Sones, however, did admit his participation in the burglary and argued entrapment as a defense. We have held that, once the defense of entrapment is established by the evidence, the prosecution has the burden of proof on that issue. Tribbett v. State, 394 So.2d 878 (Miss. 1981). We are of the opinion that the testimony of Sones was not sufficient to shift to the state the burden of proof on the entrapment issue.
Sones' entrapment defense rests on the assumption that Jack Smith, the man whom he alleged persuaded him to commit the burglary, was the confidential informant. However, no evidence reveals such a connection. The basis of the assumption lies in Sones' testimony that no one knew about the planned burglary except for himself, Pace and Smith. However, Sones could speak for himself only. It is possible that either Smith or Pace told some others about the planned burglary. Further it seems unlikely that the women who drove Sones and Pace to the grocery on the night of the burglary were unaware of the plans. We are of the opinion that the evidence presented by Sones simply did not show that Sones and Pace were entrapped by an officer of the state.
Another aspect of the entrapment defense was not sufficiently proven. For entrapment to be successfully raised, the defendant must not have been predisposed to commit the crime; the criminal intent must not have originated in the mind of the accused. Tribbett v. State, 394 So.2d 878 (Miss. 1981). The government's first soliciting or merely providing an opportunity for commission of a crime is insufficient to establish entrapment. Id. In the present case the testimony of Sones reveals that Smith merely solicited Sones and Pace to commit a crime. The testimony indicated that it took only a suggestion, with little persuasion and no coercion, to interest Sones and Pace in the burglary. The lengthy criminal record and the extensive preparation that Sones and Pace made for the burglary indicate a predisposition to commit the crime sufficient to destroy a defense of entrapment even had Smith been shown to be the state's confidential informant.
Sones and Pace next complain of the trial court's refusal to allow them to question the state's witnesses about the confidential informant. The trial judge refused to allow any question which would tend to "either tie down the identity of the informant or the location of the informant."
*533 There is no absolute rule requiring disclosure of an informer's identity. Recognition of the public interest and effective law enforcement has led to a privilege, although not absolute, of the prosecution to refuse disclosure of the identity of a confidential informer. Rovario v. U.S., 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1967). In Rovario, the United States Supreme Court stated:
Where the disclosure of the informer's identity, or of the contents of his communication is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. (353 U.S. at 60, 61, 77 S.Ct. at 628, 1 L.Ed.2d at 645).
In applying this principle, we have stated:
The proper rule regarding the circumstances under which the identity of the informer should be disclosed was stated in Young v. State, 245 So.2d 26 (Miss. 1971):
Ordinarily, disclosure of the identity of an informer, who is not a material witness to the guilt or innocence of the accused, is within the sound discretion of the trial court. Strode v. State, 231 So.2d 779 (Miss. 1970). On the other hand, where the informer is an actual participant in the alleged crime, the accused is entitled to know who he is. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)... . (245 So.2d at 27).
[Mills v. State, 304 So.2d 651, 654 (Miss. 1974)].
In our opinion, under the facts of the present case, disclosure of the informant's identity was not required. No evidence established that Smith was the informant. No evidence indicated that the informant was a material witness to the guilt or the innocence of Sones and Pace. Additionally, there was no evidence that the informant was an actual participant in the crime, nor any evidence that Jack Smith was present when the burglary was committed.
During the trial court's consideration of the objections to questions about the informant's identity, the prosecuting attorney stated unequivocally that there was no information available to the district attorney's office, the Gulfport Police Department, the Bureau of Narcotics, or the state investigators that would tend to show any entrapment. We are of the opinion that the trial judge properly exercised his discretion in denying Pace and Sones the right to question the state's witness concerning the identity of the informant.
In the next assignment of error, Sones and Pace contend that they were improperly adjudged to be habitual criminals because their prior convictions were not proved. B.C. Ruth, who was custodian of the records of Mississippi State Penitentiary at the time Sones and Pace were serving time on previous convictions, identified the original prison files of both Sones and Pace. He identified both Sones and Pace at the sentencing hearing as the persons serving the terms reflected in the files.[1] The original *534 commitment papers issued by the circuit clerks of the counties where Sones and Pace were sentenced were introduced in evidence. The photographs from the files and summary sheets which listed the offenses, the sentences, and the dates the prisoners were received and discharged from the Penitentiary were introduced in evidence. The originals of the documentary evidence were withdrawn and copies were substituted in the record. In addition, the state introduced a certified copy of the judgment of the Circuit Court of Pearl River County showing Pace's 1972 conviction and two years sentence for burglary.
Sones and Pace argue that Ruth should not have been permitted to identify the penitentiary records because he was not the custodian of the records for the Penitentiary at the time he testified. Ruth was custodian of the records when Sones and Pace were prisoners at the Penitentiary and all the records were made under his supervision. At the time of the trial, Ruth was an employee of the Penitentiary. The fact that Ruth had been transferred to another position at the Penitentiary did not disqualify him from identifying the records which were made while he was custodian of the records. Therefore, there is no merit in this argument.
Sones and Pace next contend that proof of prior convictions was not properly shown because certified copies of the judgments of conviction were not introduced in evidence. They rely on McGowan v. State, 269 So.2d 645 (Miss. 1972) and Brown v. State, 22 Miss. 863, 77 So.2d 694 (1955). In these cases we stated that the best evidence of a previous conviction is the judgment of conviction. McGowan involved the sufficiency of an indictment to charge previous offenses and in Brown the Court held that the judgment of conviction did not show that Brown pled guilty to a charge of possession of intoxicating liquor. Neither case involved proof of a prior conviction where a defendant had been sentenced to the penitentiary and actually transported to the penitentiary pursuant to commitment papers as required by sections 99-19-45 and 99-19-47 Mississippi Code Annotated (1972). Section 99-19-45 provides that the circuit clerk shall furnish the secretary of the Mississippi Penal Board, "... a commitment paper showing the name of the person convicted, the crime, term of sentence, date of sentence, sex, color and a brief history of the crime committed." Section 99-19-47 prescribes the form of the commitment paper.
The commitment paper issued by the circuit clerk is the authority for the officials at the penitentiary to receive and incarcerate a convicted felon. Both Sones and Pace were imprisoned in the penitentiary pursuant to commitment papers issued by the clerks of the various circuit courts where they were sentenced and served their sentences as shown in footnote one. There is nothing in the record to indicate the slightest doubt that Sones and Pace were in fact convicted of felonies and actually served sentences based on such conviction.
In spite of this proof, Sones and Pace argue that their sentence as habitual criminals should be set aside because the state did not prove their prior convictions by the best evidence. The commitment papers issued by the circuit clerks are required by section 99-19-45 Mississippi Code Annotated (1972) and constitute the statutory authority to transfer prisoners to the penitentiary and for the penitentiary to accept such prisoners to serve the sentences imposed. Thus, the statute effectively makes a commitment paper issued by a circuit clerk evidence of a conviction. To hold that a commitment paper is sufficient authority to imprison a convicted felon, but is not sufficient proof of the conviction upon which the imprisonment is based would exalt form over substance. Certainly, if a commitment paper is sufficient to authorize the Penitentiary officials to receive and imprison the person named therein for service of the sentence shown, it is admissible in court as evidence of the conviction of such person without the necessity of introducing the judgment of conviction.
We therefore hold that in felony cases where a prisoner is transferred to the penitentiary, the original commitment paper *535 showing conviction of a felony duly issued by a circuit clerk pursuant to section 99-19-45 may be introduced in evidence as proof of such conviction. We hold the convictions and service of sentences by these defendants were established beyond any reasonable doubt.
Sones and Pace in their final assignment of error contend that the habitual criminal statutes are unconstitutional because they constitute cruel and unusual punishment. Primarily Pace and Sones complain of considering convictions more than ten years old and argue the convictions are too remote in time to be relevant to the status of a defendant as an habitual criminal. We recognize that the time lapse between a present offense and prior convictions could be a relevant consideration. However, the Mississippi Legislature chose not to include that factor in the sentencing of an habitual offender. We have stated, quoting the United States Supreme Court in Gore v. United States, 357 U.S. 386, 393, 78 S.Ct. 1280, 1285, 2 L.Ed.2d 1405 (1958) that:
The fixing of punishment in criminal cases is a question `peculiarily ... of legislative policy.' [Jordon v. State], 383 So.2d 495, 497 (Miss. 1980)].
We are of the opinion that the absence of a limit on consideration of remote convictions in the sentencing of habitual criminals does not rise to the level of cruel and unusual punishment.
Appellant Sones further argues that section 99-19-83 Mississippi Code Annotated (Supp. 1981) is unconstitutional on several additional grounds. The United States Supreme Court has upheld similar habitual criminal statutes from different jurisdictions after numerous attacks on varying constitutional grounds. Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); Gryger v. Burke, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948). Further, in Baker v. State, 394 So.2d 1376 (Miss. 1981) we specifically held the Mississippi habitual criminal statute, section 99-19-83 Mississippi Code Annotated (Supp. 1981), was constitutional.
Finding no error, we affirm.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.
NOTES
[1] On January 4, 1960, Sones was sentenced by the Harrison County Circuit Court to serve two years for grand larceny and five years for armed robbery. The sentences were to run concurrently. Sones was received at the Penitentiary on January 19, 1960, and discharged on December 14, 1963, after serving nearly four years. He was sentenced February 15, 1973, by the Lee County Circuit Court to serve a term of three years for possession of a controlled substance. On this charge, he was received at the Penitentiary on February 15, 1973 and discharged July 25, 1974.

On April 15, 1962, Pace was sentenced by the Pearl River County Circuit Court to a one year term for burglary. He was received at the Penitentiary May 3, 1962, and discharged February 19, 1963. He was sentenced on July 3, 1964, by the Harrison County Circuit Court to a one year term for possession of burglary tools. He was received at the Penitentiary on July 17, 1964, and discharged May 13, 1965. He was sentenced on April 18, 1972, by the Pearl River County Circuit Court to a two year term for burglary. He was received at the Penitentiary May 10, 1972, and discharged May 7, 1973. He was sentenced November 21, 1975, by the Pearl River County Circuit Court to a three year term for burglary. He entered the Penitentiary December 2, 1975, and was discharged April 27, 1979. During this term of imprisonment he was paroled twice and returned to the Penitentiary twice for parole violations.