493 So.2d 350 (1986)
Richard Wayne PHILLIPS
v.
STATE of Mississippi.
No. 56093.
Supreme Court of Mississippi.
August 13, 1986.
Ralph H. Doxey, Doxey & Jones, Holly Springs, for appellant.
Edwin Lloyd Pittman, Atty. Gen., by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
EN BANC.
ROBERTSON, Justice, for the Court:

I.
This most unusual case arises from an oft-convicted felon's seizure of a county jail on a cold winter's night in 1983 during the course of which three sheriff's deputies were held hostage for more than six hours. Even more unusual was the defense: that *351 the whole idea was cooked up by the sheriff.
A circuit court jury returned a general verdict of "guilty of kidnapping". Because the defendant was stripped of his entrapment defense  which, with respect to at least one of his victims, he was entitled to have considered by the jury  we must reverse, as we have no means of ascertaining whether the jury's verdict rested in whole or in part on the infected kidnapping.

II.
On the evening of February 23, 1983, shortly after 11:00, Richard Wayne Phillips, Defendant below and Appellant here, walked into the dispatcher's office of the Marshall County Jail in Holly Springs, Mississippi. Betty Mickens, an employee of the sheriff of Marshall County, was on duty and serving as dispatcher. Phillips pointed a gun at Mickens and ordered her to call the other officers on duty into her office, which she did.
The first to arrive was Wallace Longest, who apparently was able to see what was happening and quickly left. Shortly thereafter C.E. Goode, Jr. and Bobby Joe Adkins, both Marshall County Sheriff's Deputies, arrived and each was ordered by Phillips to hand over his pistol and sit down. Phillips told Mickens, Goode and Adkins they should make themselves comfortable because they were going to be there all night.
Phillips then called Marshall County Sheriff Osborne Bell via radio and advised Sheriff Bell that he had taken control of the jail. Phillips demanded to see the United States Marshall and the news media, his announced intention being to publicize the cover-up of criminal activity in Marshall County.
Several hours later Phillips voluntarily released Deputy Adkins. At approximately 4:00 or 5:00 a.m. on the next day, some five to six hours after the jail takeover had begun  Phillips was advised that a U.S. Marshall was on the way and that the news media were present. Unarmed, he walked out of the Sheriff's office along with his two remaining hostages, Goode and Mickens.
The background facts  leading to the defense offered by Phillips  are bizarre. They begin with stories of numerous burglaries in a community known as Lake Center (also called Lake Estates). This community began as a recreational development project in the 1950s. Lots were sold around a lake in a rural part of Marshall County just off Highway 78 approximately ten miles southeast of Holly Springs. Many of the residences are lived in only part time.
At some time prior to February 23, 1983 (the time period not being shown in the record), the Lake Center community was besieged with a series of house burglaries and arsons. The solution of these crimes became a strong priority of local and state law enforcement officials.
In their attempts to solve these crimes, the sheriff's office in the latter part of 1982 enlisted the services of Phillips, who was living with his mother, Mrs. Ellie Lucille Phillips, in Lake Estates. Phillips had a criminal record for armed robbery, burglary, grand larceny, forgery and assault from the states of Tennessee, Arkansas and Oklahoma. He was also implicated in these crimes in Lake Estates.
Following this initial contact, Phillips had several clandestine meetings with the sheriff and his deputies. He met with Osborne Bell and deputies C.E. (Bug) Goode, David Pannell and Sheriff Bell.
Phillips stated he was first contacted by Goode in November, 1982, "to help him convict the people that was doing crime", and he replied that if he was granted immunity he would. Phillips testified that he later met with Goode and Sheriff Bell, with the latter requesting that Phillips get evidence against two individuals. He said the sheriff offered him immunity. He claimed to have talked with Sheriff Bell, Goode, Dickerson, David Pannell, Larry Allison and Larry Jones on different occasions. He claimed the sheriff and Goode had given *352 him a pistol which he used in the takeover of the jail.
According to Phillips, he met with Sheriff Bell under a highway bridge, at which time he was "ordered" to take over the jail. He claimed that on two previous occasions he had refused to do so. He also claimed he talked with Goode just a few minutes prior to taking over the jail, informing him what he was going to do. Goode at first tried to dissuade him from doing it that night, then Goode apparently relented, according to Phillips. Phillips testified as follows:
A. Not tonight, because they had an attorney had bought off the jury, and I told him I had to do it tonight; that's the way it was set up. He said, if you've got to do it tonight, go to the radio room and take her first and have her call up and we'll come in. Everything went accordingly. The sheriff, you know, he was supposed to come up and take control and wait till the news media got there and then ask me to surrender. At the time, there was no mention of SWAT team. He didn't realize the SWAT team was called till it came over the radio, and that's when I knew I was double-crossed. Mr. Goode knew it was double-cross, too.
Q. While you were at the jail, did you ever threaten any of these people who were there?
A. No, sir. I kept repeating they would not be harmed in any kind of way.
Q. Did you, in fact, harm anyone?
A. No, sir.
Vol. II, p. 200.
Pannell testified at trial and acknowledged that there had been clandestine meetings with Phillips. Goode likewise testified as a defense witness and corroborated that Phillips had been solicited for help in connection with the Lake Center crime investigations.

III.
Phillips was charged with the kidnapping of Mickens, Goode and Adkins in a single indictment[1] returned by the Marshall County Grand Jury on October 10, 1983, the grand jury no doubt not having the benefit of the most unusual defense Phillips was to offer at trial. The indictment further charged that Phillips was a recidivist, he having been twice previously convicted of felonies. Miss. Code Ann. § 99-19-81 (Supp. 1985). Phillips was brought to trial under this indictment on February 21, 1984.
Phillips' sole defense at trial was entrapment. He urged that the Sheriff of Marshall County had masterminded the whole affair, again for the ostensible purpose of somehow bringing major publicity to bear upon crime cover-ups said to have been occurring in Marshall County. At the conclusion of the State's case, Phillips through counsel admitted his guilt to the kidnapping and formally asserted his entrapment defense. The following colloquy is of moment.
MR. DOXEY: Your Honor, comes now the Defendant, Richard Phillips, and would offer a plea of guilty to the charge of kidnapping, and as a defense to said charge of kidnapping would show he is not guilty by reason of entrapment, and that he was induced by law enforcement officials of Marshall County and their agents to do the crime of kidnapping with which he is charged.
THE COURT: All right. As I understand, that is a plea of entrapment.
MR. DOXEY: Yes, sir.
THE COURT: All right. Show the Jury in the box.
Phillips then took the stand as a witness and personally admitted the kidnapping of Mickens, Goode and Adkins but again insisted that he was acting upon orders of Sheriff Bell. He admitted that he held a *353 gun on Mickens "for a few minutes", that he disarmed Goode and Adkins and that he had control of his hostages via these three pistols throughout the evening.
Sheriff Bell took the stand and wholly denied Phillips' charges of his involvement in the jail takeover. Mickens and Goode each took the stand and each described a kidnapping at gunpoint and that they were held by the armed Richard Phillips in the Marshall County Jail for some five to six hours before release. Adkins did not testify.
At the conclusion of the evidence, the Circuit Court held as a matter of law that Phillips' entrapment defense failed and he instructed the jury that it should "not consider the defense of entrapment". In due course thereafter the case was submitted to the jury which returned a verdict of guilty of kidnapping. The jury, however, was unable to agree concerning the sentence to be imposed.
Thereafter at a subsequent, separate sentencing hearing, evidence established that Phillips had been convicted of grand larceny in 1976 and of robbery with a deadly weapon in 1968, both offenses having occurred within the state of Tennessee. The Circuit Court thereupon sentenced Phillips to serve a term of 28 years in the custody of the Mississippi Department of Corrections, without eligibility for probation or parole. Miss. Code Ann. § 99-19-81 (Supp. 1985).
This appeal has followed.

IV.

A.
Phillips' principal assignment of error concerns the action of the Circuit Judge in taking the entrapment defense from the jury.[2] The point arises in the context of Instruction No. S-3 which was presented to the jury over Phillips' objection. Instruction No. S-3 as given the jury reads as follows:
The Court instructs the jury that at the Commencement of this Trial the Defendant announced his defense to be that of entrapment. Therefore, at the close of the State's case, the Defendant has the initial burden of going forward with some evidence of entrapment.
The Court now instructs you that considering all the evidence adduced, it is insufficient as a matter of fact or as a matter of law to constitute entrapment, and you, the Jury, shall not consider the defense of entrapment.
The procedural posture bears emphasis. Phillips claims on this appeal merely that he had presented sufficient evidence so that he was entitled to have the entrapment issue submitted to the jury. Our familiar rule, of course, provides that whether an issue should be submitted to the jury is determined by whether there is evidence which, if believed by the jury, could result in resolution of the issue in favor of the party requesting the instruction. *354 Conversely, only where the evidence is so one-sided that no reasonable juror could find for the requesting party on the issue at hand may the trial court deny an instruction on a material issue. See, e.g., Harbin v. State, 478 So.2d 796, 799 (Miss. 1985); Lee v. State, 469 So.2d 1225, 1230-31 (Miss. 1985); Fairchild v. State, 459 So.2d 793, 801 (Miss. 1985). Our question then is whether there was evidence sufficient that a rational jury might have found for Phillips on the entrapment issue.
The bulk of our prior decisions regarding the defense of entrapment arise in the context of prosecutions for the sale of contraband. The essence of the defense is that the entrapping party conceived the criminal plan and persuaded one not theretofore so predisposed to commit it. The point was stated in McLemore v. State, 241 Miss. 664, 675, 125 So.2d 86, 91 (1960) as follows:
The word `entrapment', as a defense, has come to mean the act of inducing or leading a person to commit a crime not originally contemplated by him, for the purpose of trapping him in its commission and prosecuting him for the offense. However, defendant cannot rely on the fact that an opportunity was intentionally given him to commit the crime which originated in the mind of the accused. The fact that an opportunity is furnished constitutes no defense.
McLemore v. State, 241 Miss. 664, 675, 125 So.2d 86, 91, 126 So.2d 236 (1960). See also Miller v. State, 234 So.2d 297, 301 (Miss. 1970).
Where, however, the attempt to commit the crime already existed in the mind of the accused so that the inducement merely served to give him an opportunity to commit that to which he was already disposed, the entrapment defense does not lie. See, e.g., Ervin v. State, 431 So.2d 130, 134 (Miss. 1983); Turner v. State, 415 So.2d 689, 693 (Miss. 1982); Pace v. State, 407 So.2d 530, 532 (Miss. 1981).

B.
Against this backdrop, we confront the unequivocal testimony of Phillips that the takeover at the jail was an idea conceived by Sheriff Bell which Phillips executed under "orders" from Sheriff Bell. Assuming, as we must in the present procedural context, the truth of this testimony by Phillips, the defense of entrapment is still not made. The reason, purely and simply, is that Sheriff Bell was not the person kidnapped.
Phillips' argument fails to recognize that the defense of entrapment considered so often in sale of contraband cases has important limitations upon it when the offense is one against the person of a third party. In Alston v. State, 258 So.2d 436 (Miss. 1972), this Court recognized that
This Court has drawn a distinction between those cases involved in the sale of contraband and those involving the personal or property rights of individuals, such as theft, burglary, trespass, rape and kindred offenses where the consent of the person or owner might be an element of the offense.
258 So.2d at 438.
The distinction is this: The defense of entrapment is available only when the person offended is the one who conceived the criminal scheme and induced the accused to commit it. The defense of entrapment in the context of a crime against the person of another is not available when the person, said to have conceived the criminal act and induced the accused to commit it, is not the person offended. For example, if A kills B and is subsequently prosecuted for murder, it is no defense to A that the idea for the murder was conceived by C (even if C be the sheriff) and that the murder was committed at the instruction of C. In the present context, when Phillips is charged with the kidnapping of Betty Mickens, C.E. Goode and Bobby Adkins, it is no defense that the idea for the kidnapping may have originated with Sheriff Osborne Bell and been executed by Phillips under Bell's instructions.

*355 C.
Before deciding whether the Circuit Court correctly stripped Phillips of his entrapment defense, however, we must examine the record to determine whether Mickens, Goode or Adkins played any part therein  remembering that Phillips both through counsel and in the course of his own sworn testimony at trial has admitted the kidnapping.
We have carefully reviewed the entire record of proceedings below and find not the slightest hint of evidence, either from Phillips or from anyone else, that Mickens played any part in her being kidnapped and detained of her liberty by the armed Phillips for some six hours on February 23-24, 1983. Indeed, the record is clear that Mickens was completely surprised when Phillips made his entry at approximately 11:00 p.m. on February 23. Phillips is without an entrapment defense to the charge of kidnapping Mickens.
The same is true in the case of Adkins, the deputy sheriff who came into the room following the summons given by Dispatcher Mickens at Phillips' order. No testimony, from Phillips or anyone else, suggests that Adkins had any involvement in the jail takeover scheme or even any prior advance knowledge of what was being planned.
The case of Deputy Sheriff C.E. Goode, Jr. is different. Although Goode took the stand and like Mickens denied any prior knowledge or previous assent or involvement, Phillips did testify to the contrary. Specifically, Phillips testified that he had talked with Goode earlier the day of the kidnapping and that Goode was aware of what was to take place. According to Phillips, Goode originally protested that "this is not the time," to which Phillips responded
I told him I was supposed to do it tonight; it was set up tonight, ... . I told him I had to do it tonight; that's the way it was set up. He [Goode] said, `If you've got to do it tonight, go to the radio room and take her first and have her call up and we'll come in.' Everything went accordingly. The sheriff, you know, he was supposed to come up and take control and wait until the news media got there and then ask me to surrender... . [Emphasis supplied]
Again our procedural context requires that this testimony be taken as true. This done, we consider it adequate to establish a jury question on whether Goode had prior advance knowledge of the jail takeover, was a part of the scheme allegedly masterminded by Sheriff Bell and, ultimately, whether he consented to being kidnapped.

D.
Assuming it to have been error to strip Phillips of his entrapment defense to the charge of kidnapping Goode, the question then becomes whether reversal is required. We think so, by reference to venerable precedent emanating from the Supreme Court of the United States.
If a jury has been instructed that it may rely on any one of two or more independent grounds, and one of those grounds is insufficient, a subsequent general verdict of guilty must be set aside because the verdict may have rested exclusively on the insufficient ground. This rule originated in Stromberg v. California, 283 U.S. 359, 369-70, 51 S.Ct. 532, 535-36, 75 L.Ed. 1117 (1931). Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957) holds that a general verdict must be
set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected.
354 U.S. at 312, 77 S.Ct. at 1073, 1 L.Ed.2d at 1371.
That the rule is alive and well and living in those jurisdictions subject to the Constitution of the United States has been made clear in Zant v. Stephens, 462 U.S. 862, 881, 103 S.Ct. 2733, 2744, 77 L.Ed.2d 235, 252 (1983).
Our problem lies in two instructions submitted the jury, Instruction Nos. S-1 and D-7. Each of these instructions advises *356 the jury that it may find Phillips guilty of kidnapping if it find that Phillips
without lawful authority, and through the cause of force, seized and confined Betty Mickens, or C.E. Goode, Jr. [sic] and/or Bobby Adkins with the intent to cause them or any one of them to be secretly confined at or imprisoned at the office of the county jail against the will and without the consent of Betty Mickens, C.E. Goode, Jr. [sic] and Bobby Adkins... . [Emphasis supplied]
Instruction No. D-7 is practically identical. The point is that the jury was unequivocally instructed on two separate occasions that it might return a verdict of "guilty of kidnapping" upon a finding that Phillips kidnapped "Betty Mickens, or E.C. Goode, Jr. or Bobby Adkins with the intent to cause them or any one of them to be ... confined ... or imprisoned... ." The general verdict makes it impossible for us to tell exactly what the jury found.
We have explained above that Phillips was of right entitled to have the jury consider his entrapment defense to the charge of kidnapping Goode. If kidnapping Goode had been all Phillips had been indicted for, reversal would clearly be in order. The same result follows in any event for the alternative wording in the instruction leaves us with no means of ascertaining beyond a reasonable doubt that the jury's general verdict of "guilty of kidnapping" was not predicated upon a finding that Goode was the party kidnapped.
True, the failure to allow the jury to consider the entrapment defense infects only the conviction of kidnapping Goode. If we could ascertain beyond reasonable doubt that the jury's verdict was premised upon Phillips' kidnapping of Mickens and Adkins, or both of them, we would affirm. But, as Zant v. Stephens, supra, suggests, this may only be done where the verdict states whose kidnapping the jury found, that is, where the jury returns a special verdict. In the present setting, a verdict general and inseverable must fall.
Where multiple charges are submitted to a jury and where the jury returns a verdict of guilty to a single offense, i.e., as here, kidnapping, and where the evidence in the record and the instructions under which the matter was submitted to the jury are such that one of the charges must fall, the judgment of conviction may be affirmed only if we may conclude beyond a reasonable doubt that the infected charge was separable and that there was an adequate factual and legal basis for the conviction of the defendant on another severable charge. On the authority of Stromberg, Yates, Stephens and the many cases cited therein, the general verdict here does not permit of such a conclusion.
The judgment of conviction is reversed and the case is remanded to the Circuit Court of Marshall County for a new trial.
REVERSED AND REMANDED
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] Just why the prosecution and the grand jury chose to charge three kidnappings in a single count indictment we do not know. As will become apparent, the fact that the three charges were lumped together is what proves fatal to the State's case on this appeal. Effective July 1, 1986, multi-count indictments became authorized in this state. Miss. Laws, 1986, ch. 444, p. 509. This new enactment, however, has no effect upon the case at bar.
[2] Phillips had requested two entrapment instructions, both of which were refused by the Circuit Court. These read:

D-1
`Entrapment' means inducing or leading a person to commit a crime not originally planned and/or contemplated by him.
Evidence has been presented that the Defendant was induced to commit the crime by law enforcement officers or their agents. For you to find the Defendant guilty, the State must prove to your satisfaction beyond a reasonable doubt that the Defendant was already willing to commit the crime and that the law enforcement officers or their agents merely gave him the opportunity.
Vol. III, p. 291.
D-6
`Entrapment' means inducing or leading a person to commit a crime not originally planned and/or contemplated by him.
Evidence has been presented that the Defendant was induced to commit the crime of kidnapping by law enforcement officers or their agents. For you to find the Defendant guilty, the State has the burden of proving, to your satisfaction, beyond a reasonable doubt that the Defendant was already willing to commit the crime and that the law enforcement officers or their agents merely gave him the opportunity.
If the State has failed to show beyond a reasonable doubt that the Defendant was already willing to commit the crime, then you shall find the Defendant, not guilty.
Vol. III, p. 296.