# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CT-00688-SCT

*ALFRED McCOLLUM*

*v.*

*STATE OF MISSISSIPPI*

### <u>ON WRIT OF CERTIORARI</u>

| | |
|---|---|
| DATE OF JUDGMENT: | 02/21/1997 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LESLIE D. ROUSSELL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | DEWITT L. FORTENBERRY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 3/2/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/23/2000 |

## EN BANC.

## MILLS, JUSTICE, FOR THE COURT:

¶1. Alfred McCollum was convicted of the sale of cocaine and sentenced to serve a term of nine years in the custody of the Mississippi Department of Corrections. McCollum appealed, and his case was assigned to the Court of Appeals, which affirmed his conviction. Because the trial court erred when it refused McCollum's entrapment instruction, we reverse and remand for a new trial.

### FACTS

¶2. On May 27, 1996, Wayne Muscio, an officer with the Collins, Mississippi Police Department was working undercover posing as a drug purchaser. Muscio was working in conjunction with Sergeant Dan McIntosh, also of the Collins Police Department, who had set up video and audio surveillance equipment in Muscio's vehicle. Muscio arrived at a Chevron service station in Collins and parked near one of the station's gas pumps. Shortly thereafter, McCollum arrived and parked his car near the same gas pump. Muscio asked McCollum if he had a twenty. McCollum replied that he did and drove to a nearby laundromat.

¶3. When the two arrived at the laundromat, Muscio stayed in his truck while McCollum got out of his car

and walked over to the truck. McCollum exchanged a rock of cocaine with Muscio for twenty dollars. The exchange was recorded by the video camera hidden in Muscio's truck.

¶4. After Muscio and McCollum left the Chevron station, Muscio went to a prearranged spot to meet Sergeant McIntosh, where he put the rock in a plastic bag and initialed and dated the bag. The bag was subsequently delivered to the Mississippi Crime Lab which, after performing ultraviolet spectrophotometry and mass spectrometry testing, determined the contents of the bag contained cocaine.

¶5. McCollum was subsequently indicted and tried for the sale of cocaine. The jury found McCollum guilty, and his motions for new trial and judgment notwithstanding the verdict were denied. McCollum appealed, and his case was assigned to the Court of Appeals which affirmed his conviction. *McCollum v. State*, No. 97-KA-00688-COA, 1999 WL 228122 (Miss. Ct. App. Apr. 2, 1999). McCollum then filed a Petition for Writ of Certiorari which we granted.

## ANALYSIS

¶6. McCollum argues that he was entitled to receive an instruction on entrapment. In support of his position McCollum cites *King v. State*, 530 So. 2d 1356 (Miss. 1988). Though somewhat lengthy, our analysis in that case is instructive:

> Entrapment is an affirmative defense. Once the defendant makes out a prima facie case that he was entrapped, two consequences follow. First, the burdens of production and proof shift to the prosecution. *Ervin v. State*, 431 So.2d 130, 133-34 (Miss.1983); *Tribbett v. State*, 394 So.2d 878, 881 (Miss.1981); *Alston v. State*, 258 So.2d 436, 438 (Miss.1972). Second, the accused becomes entitled to have the issue of entrapment submitted to the jury on proper instructions. The defense of entrapment is available where criminal intent did not originate in the mind of the accused, or stated differently, where the accused was not predisposed to commit the crime. *Howard v. State*, 507 So.2d 58, 61 (Miss.1987); *Pace v. State*, 407 So.2d 530, 532 (Miss.1981); *McCormick v. State*, 279 So.2d 596, 597 (Miss.1973). Where, however, the intent to commit the crime already existed in the mind of the accused so that the inducement merely served to give him an opportunity to commit that to which he was already disposed, the entrapment defense does not lie. *Phillips v. State*, 493 So.2d 350, 354 (Miss.1986) and cases cited therein; *Barnes v. State*, 493 So.2d 313, 315 (Miss.1986).

> Whether the entrapment defense--or any other issue of fact--should be submitted to the jury ultimately turns on whether there is in the record credible evidence supporting it. Here the test is the reverse of that described in Part III above, "for now the defendant must be given the benefit of all doubts about the evidence." *Lee v. State*, 469 So.2d 1225, 1230 (Miss.1985). Where a party offers evidence sufficient that a rational jury might find for him on the particular issue, that party as of right is entitled to have the court instruct the jury on that issue and submit the issue to the jury for its decision. *See, e.g.*, *Monroe v. State*, 515 So.2d 860, 863 (Miss.1987); *Armstead v. State*, 503 So.2d 281, 285 (Miss.1987); *Lee v. State*, 469 So.2d 1225, 1230-31 (Miss.1985).

> We have expressly held that this rule applies in an entrapment case. *See Phillips v. State*, 493 So.2d 350, 353-54 (Miss.1986), a case where the trial court had refused the entrapment instruction. In reversing, this Court stated:

Phillips claims on this appeal merely that he had presented sufficient evidence so that he was entitled to have the entrapment issue submitted to the jury. Our familiar rule, of course, provides that whether an issue should be submitted to the jury is determined by whether there is evidence which, if believed by the jury, could result in resolution of the issue in favor of the party requesting the instruction. Conversely, only where the evidence is so one-sided that no reasonable juror could find for the requesting party on the issue at hand may the trial court deny an instruction on a material issue. [citations omitted]

493 So.2d at 353-54. Our question then is whether there was sufficient evidence in the record that a rational jury might have found for King on the entrapment issue.

To begin with, King admitted the offense charged in the indictment. He testified, however, that he had purchased the half pound of marijuana in Texas and had brought it with him to Mississippi where he was keeping it for his own personal use. He expected to be in Mississippi for several months, having been laid off from his job at Brown & Root Corporation as an offshore oil rig construction worker in Texas. The quantity--one half pound--is not so large that the suggestion that he was keeping it for his personal use was inherently incredible. When asked if he had ever sold marijuana before, King testified "No, I hadn't." King's testimony is quite unequivocal that he would never have sold marijuana had it not been for the constant importuning of the Bureau of Narcotics' confidential informant Joyce Clouse. If believed, King's evidence established that before November 14, 1985, he had no predisposition to commit the crime of sale of marijuana. Given the evidence in the record, we cannot say that a jury would have been irrational had it so found. Indeed, our procedural context requires that King's testimony "be taken as true." *Phillips v. State*, 493 So.2d 350, 355 (Miss.1986).

The State's brief emphasizes evidence before the Circuit Court that King was "predisposed" and was not entrapped. No doubt there is such evidence, but that is of no moment. King is not here arguing that the evidence is legally insufficient to support a verdict against him, only that he was denied the right to have the jury pass on his sole defense. Put otherwise, that the record contains evidence adequate to undergird a jury's rejection of an entrapment defense is wholly irrelevant to the question whether the accused was entitled to have the issue submitted via an entrapment instruction. *See Lee v. State*, 469 So.2d at 1229-32.

Nothing in cases such as *Harper v. State*, 510 So.2d 530, 531 (Miss.1987); *Ervin v. State*, 431 So.2d 130 (Miss.1983); *Carroll v. State*, 396 So.2d 1033 (Miss.1981); or *Tribbett v. State*, 394 So.2d 878 (Miss.1981) or cases of that sort are to the contrary. Those cases merely state in a conclusory fashion that the defendant had not made out a prima facie case. Where, as here, the defendant admitted the offense but testified unequivocally that he had never made a sale of marijuana before, that he had no plans, intention or disposition for making such sale, and that had it not been for the importuning of the Bureau of Narcotics confidential informant he would not have done so, he has made his prima facie case and is entitled to have the question submitted to the jury. This being a central issue in the case, and, indeed, King's entire defense, we have no alternative but to reverse the judgment of conviction and the sentence entered thereon and remand the case for a new trial.

*King v. State*, 530 So.2d at 1358-60.

¶7. In the present case, the Court of Appeals majority found on this issue:

"Mississippi follows the rationale of the defendant's predisposition in determining whether entrapment occurred. It is an affirmative defense, and the defendant must first show evidence in support of the defense. Then it becomes the state's burden to show predisposition on the part of the defendant." *Ervin v. State*, 431 So.2d 130, 134 (Miss.1983).

McCollum admitted having sold rock cocaine to Officer Muscio, but denied having a predisposition to the sale. He argues that but for Officer Muscio's several attempts to have conversations with him about wanting to buy drugs, he would not have sold the cocaine. According to McCollum, the cocaine was intended for his personal consumption rather than for distribution.

A review of the record reveals that the State introduced into evidence a videotape which captured McCollum's actions and demeanor while transacting the sale of cocaine to Officer Muscio. The videotape evinced McCollum's ready commission of the crime which amply demonstrated his predisposition to the sale of cocaine. *Johnston v. State*, 93-KA-01418-SCT, p.14 (Miss. Sup. Ct.1997) [730 So.2d 534]. McCollum's testimony regarding his frequent purchase, possession and use of cocaine also established his predisposition regarding drug statutes. *Id.*

Considering the previous evidence, this Court finds that there was sufficient evidence to support McCollum having a predisposition to the sale of cocaine. *Id.* Because McCollum exhibited this predisposition, the trial judge did not err in refusing to grant an instruction on entrapment. *King*, 530 So.2d at 1358.

*McCollum*, 1999 WL 228122 at *2.

¶8. Much of the language used by the majority in the Court of Appeals opinion stems from *Johnston*, *supra*, that case involved the sufficiency of the State's evidence establishing predisposition, not whether the appellant was entitled to an entrapment instruction.

¶9. Judge Coleman dissented, was joined by two other members of the Court of Appeals, stated:

Because I find McCollum's testimony sufficient to support his defense of entrapment, I respectfully dissent. The Mississippi Supreme Court explicated the defense of entrapment in *Walls v. State*, 672 So. 2d 1227, 1230-31 (Miss. 1996).

. . . . . . . . . . . . . . .

To support my reason for dissenting, which is that McCollum's testimony was sufficient to support a "rational" jury's finding for him on the entrapment issue as required by the previously quoted standard of review, I offer the following excerpts from McCollum's testimony on direct examination:

Q. Do you recall the first time you saw Wayne Muscio that day?

A. Yes, sir.

Q. Tell the jury when you saw him and what transpired?

A. Okay. I was coming out of this certain community in Collins. I had $10.00 left. I bought an $8.00 dollar piece of crack cocaine, and I was going to put $2.00 worth of gas in my car and go home. So, while I was pulling out of this community, he stopped me and asked me about drugs, which I had

never seen this guy before. And he got to telling me . . . . about how, you know, he had been over in this community and other guys had been ripping him off of money and selling him wax and soap. And I felt sorry for him because I was a drug addict, and I work hard for my money. If I want to buy some drugs, I want to make sure they [are] drugs. And so, I told him, no, I didn't know where no drugs was. So, I left there and I went to Jr. Food Mart, and he followed me up to Jr. Food Mart. I had no intent of selling this guy any drugs, you know, because he come to me saying he had been ripped off and guys had been, you know, stealing money from him. I'm not prejudiced. If I can help anybody, I'm going to help them out.

. . . .

I told him I didn't know where none [dope] was because I, you know, I hadn't seen him. I didn't know him, you know. He kept begging me and following me all the way to Jr. Food Mart. I don't know this guy.

Q. Would you have sold it to him if you had known him?

A. No. I don't sell cocaine. I smoke cocaine. I work for a living. I'm not a drug dealer.

As the majority opinion recites, the officers had made a videotape of the transaction between McCollum and the undercover narcotics officer, Wayne Muscio, which occurred at a service station in Collins. McCollum's counsel questioned McCollum about what the videotape, when played, portrayed:

Q. Okay. So, you pulled into the gas station and you saw that on the tape; is that correct?

A. Yes, sir.

Q. And what happened?

A. Well, I was going to the gas pump to get some gas to go on home with and he stopped me again, you know. He just, like I say, was following me. I had no intention of selling this guy no drugs. He just, you know, kept asking me and begging me telling me about how, you know, other people had ripped him off.

Q. Do you recall what the first thing said was between the two of you?

A. Well, when he flagged me down at the service station talking about he had been looking for me, which he couldn't have been looking for me because I had never seen him before. Me and him had had no conversation about any drugs, you know, until then. I don't know him. And like I said, I'm not prejudice [sic], you know. I thought he was an addict like I was, you know. If you go buy some dope and somebody steals your money, that hurts you, and that's what he had been telling me they had been doing.

When his counsel asked McCollum, "Is there any other reason why you would have gave [sic] him that $8.00 piece of cocaine for $20.00?," McCollum replied:

No reason. I would have smoked it myself. If he hadn't stopped me and kept begging and saying, you know, he needed it, I wouldn't have sold him that dope because like I said, I smoke dope. All the

dope that I can get my hands on I smoke it myself, and I buy it with my own money. I'm not a drug dealer.

McCollum further testified that when he was arrested, he "had been on that job for two and a half years for Delco Ltd. in Raleigh, Mississippi." He admitted that his employer terminated him after he had been incarcerated in the county jail. McCollum never denied that he sold Officer Muscio the single rock of cocaine for $20.00.

My colleagues in the majority conclude "that there was sufficient evidence to support McCollum['s] having a predisposition to the sale of cocaine," and, therefore, "[b]ecause McCollum exhibited this predisposition, the trial judge did not err in refusing to grant an instruction on entrapment." (Majority opinion, p. 4). I do not disagree that "there was sufficient evidence to support McCollum's having a predisposition to the sale of cocaine," but with deference to my colleagues in the majority, I submit that McCollum's testimony, which I have quoted, was also sufficient for "a rational jury [to] have found for [McCollum] on the entrapment issue." *See Walls*, 672 So. 2d at 1230.

*McCollum*, 1999 WL 228122 at \*4-6. (Coleman, J., dissenting).

¶10. Pursuant to *King v. State*, *supra*, McCollum's above testimony established at least a jury question regarding entrapment in this case. Therefore McCollum was entitled to an entrapment instruction, especially in light of the fact that entrapment was his entire defense. We therefore reverse and remand this case for a new trial.

## CONCLUSION

¶11. We find that McCollum was entitled to have his instruction on entrapment given to the jury, and the trial court erred when it refused to give it. Therefore we reverse the judgments of the Court of Appeals and the Covington County Circuit Court, and we remand this case to the Covington County Circuit Court for a new trial consistent with this opinion.

¶12. **REVERSED AND REMANDED.**

**PRATHER, C.J., BANKS, McRAE AND WALLER, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, P.J. AND COBB, J.**

**SMITH, JUSTICE, DISSENTING:**

¶13. I respectfully dissent for the following reasons: First, I would dismiss McCollum's Petition for Writ of Certiorari as untimely because it was filed seven days late. *See* M.R.A.P. 17(b) (petition for writ of certiorari must be filed in the Supreme Court within fourteen days from date of entry of judgment by the Court of Appeals). McCollum fails to give the Court any reason whatsoever for the late filing. Indeed, the petition fails to even mention the late filing.

¶14. Second, considering the merits of the issue upon which the majority reverses McCollum's conviction and sentence, in my view, there is an absolutely clear and valid legal reason why the trial judge did not allow McCollum's entrapment instruction. The Court of Appeals was correct to affirm McCollum's conviction.

¶15. This Court, in *King v. State*, 530 So. 2d 1356, 1358-59 (Miss. 1988), stated:

> Entrapment is an affirmative defense. Once the defendant makes out a prima facie case that he was entrapped, two consequences follow. First, the burdens of production and proof shift to the prosecution.... The defense of entrapment is available where criminal intent did not originate in the mind of the accused, or stated differently, where the accused was not predisposed to commit the crime. Where, however, **the intent to commit the crime already existed in the mind of the accused so that the inducement merely served to give him an opportunity to commit that to which he was already disposed, the entrapment defense does not lie**.

(citations omitted & emphasis added.) Thus, the primary question is whether the prosecution's proof overwhelmed the meager proof offered by McCollum regarding predisposition to preclude the necessity of granting McCollum's requested entrapment defense instruction?

¶16. In my view, McCollum simply failed to make out a sufficient prima facie case of true inducement by the undercover agent and lack of predisposition by McCollum to sell drugs to the agent. This Court has held that the mere raising of the entrapment defense "opens the door for the prosecution to introduce evidence of predisposition to commit the offense." *Hopson v. State*, 625 So. 2d 395, 402 (Miss. 1993). The State's evidence clearly and sufficiently demonstrated McCollum's predisposition to sell cocaine.

¶17. What was the State's evidence? First, the jury was shown a videotape with audio of the entire transaction. Thus, McCollum's actions, demeanor, and voice were observed and heard by the jury. Likewise, so were the drug agent's. Then, there is the testimony of the agent himself which overwhelmingly refutes any suggestion of "constant importuning" which so concerned the *King* Court. Webster defines the word "importune" as, "to press of urge with troublesome persistence; to beg, urge, or solicit persistently or troublesomely." Webster's Third New International Dictionary 1135 (3rd ed. 1976). Indeed, this case stands in stark contrast to the facts in *King*, (relied upon so heavily by the majority), where King testified that the confidential source "had been bugging him for months to sell her some marijuana. . . .[and] that he finally gave in to her persistent demands." *King*, 530 So. 2d at 1357. Here, Agent Muscio, alone in his vehicle, first approached McCollum at the Junior Food Mart and asked him about purchasing a single rock of cocaine. The record reflects that McCollum answered no only once. Shortly thereafter, at the laundry mat Muscio again asked McCollum, "Hey, man, you got a 20?" On cross-examination, McCollum admitted that he replied "Yeah, I got one." McCollum also admitted that Agent Muscio never left his vehicle at either location, not even to make the actual purchase of the cocaine. Instead, McCollum got out of his vehicle and brought the cocaine to Muscio's vehicle. There is a total absence of pleading, begging, pressure, coercion, undue influence, arm-twisting, trickery, deceit or "constant importuning" as described by the Court in *King*. Additionally, there is evidence here of McCollum's prior drug-related activities which adequately demonstrated predisposition and/or inclination to sale the cocaine to Agent Muscio. McCollum admitted that he was a frequent purchaser of cocaine. We should note also that this is not one of those cases where the confidential source or undercover drug agent supplied the cocaine, but rather, it was McCollum, a frequent cocaine purchaser, who supplied the drug. Finally, there is McCollum's admitted profit in selling the cocaine and making money off the transaction which was also presented to the jury.

¶18. This is not a case where McCollum was entitled to an entrapment defense instruction. Simply put, McCollum failed to establish that he lacked the predisposition to commit the act of selling cocaine, thus entrapment was not a defense. *Hopson v. State*, 625 So. 2d 395, 399 (Miss. 1993). The Court of

Appeals and the trial judge correctly ruled regarding this issue. I would affirm those courts.

¶19. For these reasons, I respectfully dissent.

**PITTMAN, P.J., AND COBB, J., JOIN THIS OPINION.**