IRVING, J.,
for the Court:
¶ 1. Ron Sharp was convicted in the Circuit Court of Marshall County on a charge of sale of cocaine and was sentenced to a term of fifteen years in the custody of the Mississippi Department of Corrections. Aggrieved by the judgment rendered against him, Sharp has appealed contending that the evidence is insufficient to sustain the verdict, that the verdict is against the overwhelming weight of the evidence and that the trial judge erred in not allowing an entrapment instruction. Finding no reversible error, we affirm.
FACTS
¶ 2. Sharp’s indictment and conviction was the result of a controlled buy operation. Mississippi Bureau of Narcotics undercover agent, Angela Strickland, and an informant, Phillip Pipkin, were working an undercover drug operation in Marshall County. Sharp’s name was on a list of individuals that had been provided to the undercover operations team by Pipkin. The individuals on the list were said to be involved in the sale of illegal drugs in the county. Strickland testified that on the day of the buy she had gone out with Pipkin with the intention of making a buy from any of the suspects, and Sharp was the first one that she and Pipkin encountered. Strickland wore a body wire and carried a micro-cassette recorder that recorded the sales transaction.
¶ 3. StricMand and Pipkin encountered Sharp while driving on a public road and waved to him, signaling their desire to purchase drugs. Sharp signaled them to follow him, which they did. Sharp stopped his vehicle along the shoulder of another roadway near a driveway, got out, and raised the hood of his car. Strickland and Pipkin drove into the driveway and *941 stopped. Strickland exited the vehicle and walked over to where Sharp was standing with the hood raised on his automobile. The transcript of the cassette tape recording reveals the following
Sharp: What’s up. I’m just doing this so it won’t look so obvious.
Strickland: I damn near lost that car. Sharp: Ok
Strickland: (unintelligible) Can I pick my own?
Sharp: Yeah.
Strickland: You know how women like to shop? I want them two right there.
Sharp: These two right here?
Strickland: UhUh.
Sharp: I bull-s— you not.
Strickland: Your [sic] dropping crumbs all over the motor.
Sharp: It’s alright. Look I would like to speak with you.
Strickland: Huh?
Sharp: The other one’s from the heart. Strickland: Huh?
Sharp: The other one’s from the heart. Strickland: Well your [sic] so sweet. Sharp: Come back to see me. I’m serious.
Strickland: I will.
Sharp: Alright.
Strickland: You see that truck around, I’m partying.
Sharp: Ok.
Strickland Your [sic] a good man.
Sharp: You’ll lie about it. Hey, I done her right.
Strickland: Yes, you did.
Strickland: Give me three.
¶ 4. At the trial Strickland gave testimony that corroborated the events that transpired on the tape as did Mississippi Bureau of Narcotics agent Terry Spillars. Spillars was the agent in charge of the operation and he monitored the transaction over Strickland’s body wire as it was occurring. There also was testimony from a forensic scientist verifying that the substance was crack cocaine.
¶5. Sharp took the stand in his own defense and testified that he was hounded into selling the crack by the undercover agent and informant. Sharp initially testified that he was hounded the entire day by Pipkin and Strickland into selling the drugs. He then admitted on cross-examination that he first encountered the two at about 5:30 or so in the afternoon and that it was 5:36 p.m. when he sold two rocks of crack cocaine to Pipkin. He was not charged with that sale. Sharp claimed that he did not have any drugs himself and only obtained the drugs from a friend, Cardis Lesure, in order to stop Pipkin from hounding him.
¶ 6. When Sharp was pressed further on cross-examination, he was forced to admit that the “hounding” in connection with the sales constituted nothing more than the five minute conversation he had with the officers when they encountered him around 5:30 p.m. That is highlighted in the following exchange:
Q. Okay, and if you sold dope to them at 5:36, it took them a whole six minutes to hound you into selling that first rock of cocaine. Is that your testimony?
A. That ain’t the first time that Phillip Pipkin had brought some other person, strange person I didn’t know anything about to me and hounded me.
Q. Okay, but I’m talking about this day.
A. Yes, sir.
* * * *
Q. So, from that time they first saw you, they hounded you for five minutes, and they sold you a rock of cocaine. Is that — You sold them a rock of cocaine. Is that right?
A. Yes, sir.
*942 Q. How did you go get it?
A. I did not go get it. The man- — the guy was just already there.
Q. Mr. Lesure?
A. Yes, sir.
Q. So, you went over to Mr. Lesure and got a rock of cocaine. Is that right?
A. Yes, sir.
Q. And then, turned right back around and sold it to Mr. Pipkin?
A. Yes, sir.
¶ 7. Sharp also claims that he made the second sale, which is the basis of the charge in the case at bar, because Strickland and Pipkin continued to hound him. The time of this sale was 6:07 p.m. According to Sharp’s own testimony, however, there was no contact between Sharp and the police operatives between buys. Strickland testified in rebuttal that when Pipkin made the first buy Pipkin told Sharp that Strickland was going to sample the cocaine, and if she liked it they would be back so that she could make a purchase.
Analysis of Issues Presented

I. Sufficiency of the evidence

¶ 8. “The standard of review for the legal sufficiency of the evidence is well-settled: [W]e must, with respect to each element of the offense, consider all of the evidence — not just the evidence which supports the case for the prosecution — in the light most favorable to the verdict. The credible evidence which is consistent with guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence.... We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fairminded jurors could only find the accused not guilty.” Franklin v. State, 676 So.2d 287, 288 (Miss.1996) (quoting Wetz v. State, 503 So.2d 803, 808 (Miss.1987)).
¶ 9. It appears obvious to this Court that the evidence was more than sufficient to support the jury verdict. Sharp admits selling the cocaine to the undercover agent. He claims to have been hounded into doing so against his will. However, the proof pointed to a willing seller. While Sharp complains that Pipkin had at other times brought unknown persons to him to make purchases, we find nothing entrapping about that process. That Sharp may have on other occasions sold drugs to strangers, brought to him by Pipkins, in no way proves that he was entrapped by Pip-kins in the drug sale which is the focus of this appeal. That process or practice is frequently utilized in the undercover buying of drugs.
¶ 10. Sharp seems to think that the fact of his having to procure the drugs from a friend somehow supports his argument that he was coerced into selling the cocaine against his will. It is a strange argument when one considers the fact that the friend was right there on the scene of the transaction. The proof is that Sharp made the first sale within five or six minutes of being asked. The second sale, which is the subject of this appeal, was made within thirty minutes of the first sale. During the thirty minute interval, neither the informant nor the undercover agent had any contact with Sharp. In the face of such proof, we conclude that the evidence was not only sufficient to support the jury’s verdict, it was overwhelming.

II. Weight of the evidence

¶ 11. A motion for a new trial based on the contention that the verdict is against the overwhelming weight of the evidence “implicates the trial court’s sound discretion .... and the motion should not be granted except to prevent an unconscionable injustice. We reverse only for abuse of discretion, and on review we accept as true all evidence favorable to the State.” McClain v. State, 625 So.2d 774, 778 (Miss.1993) (quoting Wetz, 503 So.2d at 807-08).
¶ 12. For reasons already set forth, clearly the verdict is not so contrary to the overwhelming weight of the evidence that *943 to allow it to stand would be to sanction an unconscionable injustice. We find no abuse of discretion on the part of the trial judge. This issue has no merit.

III. Entrapment instruction

¶ 13. Sharp argues that, at best, the evidence establishes that he was initially approached and was not the instigator and/or aggressor in this matter. He claims that the evidence does not establish that he is guilty of sale of cocaine. Sharp concedes that even though the record clearly reflects that he did sell two rocks of cocaine to Strickland, he never intended to commit the crime he was accused, indicted and convicted of but was entrapped by agents of the police.
¶ 14. Mississippi’s law on entrapment is well-settled. “The word ‘entrapment’ as a defense has come to mean the act of inducing or leading a person to commit a crime not originally contemplated by him, for the purpose of trapping him in its commission and prosecuting him for the offense. However, [a] defendant cannot rely on the fact that an opportunity was intentionally given him to commit the crime which originated in the mind of the accused. The fact that an opportunity is furnished constitutes no defense.” McLemore v. State, 241 Miss. 664, 675, 125 So.2d 86, 91 (1960).
¶ 15. “[Wjhether [the] issue [of entrapment] should be submitted to the jury is determined by whether there is evidence which, if believed by the jury, could result in resolution of the issue in favor of the party requesting the instruction. Conversely, only where the evidence is so one-sided that no reasonable juror could find for the requesting party on the issue at hand may the trial court deny an instruction on a material issue.” Phillips v. State, 493 So.2d 350, 353-54 (Miss.1986). “[Wjhether the entrapment defense should be submitted to the jury depends upon whether there is credible evidence in the record supporting such a defense.” Avery v. State, 548 So.2d 385, 387 (Miss.1989) (quoting King v. State, 530 So.2d 1356, 1359-60 (Miss.1988)).
¶ 16. The Mississippi Supreme Court has held that an entrapment instruction is not necessary where a defendant was merely “asked to sell the substance and he was caught.” Ervin v. State, 431 So.2d 130, 134 (Miss.1983). In the case at hand, as in Ervin, Sharp was asked to sell the substance and he was caught. No one coerced or otherwise forced him to make the sale. There is simply no credible evidence in the record supporting an entrapment defense. No reasonable juror could find for Sharp on the issue of entrapment based on the evidence presented. Consequently, this Court holds that the record fails to support a finding that Sharp made a prima facie case of entrapment. The trial court did not err in refusing to submit the issue of entrapment to the jury.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF MARSHALL COUNTY OF CONVICTION OF THE SALE OF COCAINE AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.