431 So.2d 130 (1983)
Billy R. ERVIN
v.
STATE of Mississippi.
No. 53634.
Supreme Court of Mississippi.
April 13, 1983.
Rehearing Denied May 25, 1983.
Edward Witt Chandler, Memphis, Tenn., for appellant.
Bill Allain, Atty. Gen. by Frankie Walton White, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before BROOM, P.J., and PRATHER and ROBERTSON, JJ.
*131 BROOM, Presiding Justice, for the court:
Controlled substance possession, over one kilo of marijuana, with intent to deliver is the charge upon which the defendant, Billy R. Ervin, was convicted in the County Court of DeSoto County, the Honorable Mills Barbee, presiding. Jury trial on August 26, 1981, resulted in a "guilty as charged" verdict. Four years imprisonment and a $5,000 fine were fixed as Ervin's punishment by county court order dated September 18, 1981. We affirm.
On appeal here, defendant Ervin argues that the lower court erred in [1] disallowing his defense based on entrapment, [2] admitting into evidence illegally obtained evidence, [3] allowing testimony of state expert forensic scientist that the substance was marijuana, [4] and in rejecting defendant's requested instruction concerning a "missing witness", and [5] refusing to declare Mississippi Code Annotated § 41-29-105 (1972) unconstitutional.
Facts of the case are the following: Agents of the Mississippi Bureau of Narcotics arrested one Burnette on or about December 19 or 20, 1980, in his Greenville, Mississippi home, and charged him with possession of approximately 15 pounds of marijuana, possession of LSD, and possession of hashish. Burnette was taken to the Washington County jail, and discovery was made that he was a fugitive from justice in Tennessee, and wanted in connection with a burglary in Oxford, Mississippi. After Burnette was released on bond, he made contact with agent Richard Oakes who had left his calling card with Burnette's "wife". (It is not clear from the record that Burnette was married). Oakes told Burnette that any assistance he could provide would be reported to the district attorney. Oakes testified that he made no offer of leniency. Burnette had never been an informant before, but the record supports the contention that he decided to become one in hope that it would aid him in his own predicament. Burnette, who knew Ervin from their association with mutual friends, decided to call Ervin and set up a marijuana purchase with narcotics agents present. Between December 26 and 28, 1980, Burnette called Ervin who was said to have stated that he could obtain 20 pounds of marijuana. On December 28, 1980, Burnette went to Hernando, Mississippi, and called Ervin. They agreed that Ervin would meet Burnette at the Shakey's Pizza Parlor parking lot near the Mississippi-Tennessee state line in DeSoto County, Mississippi. Burnette stated that he could not come to Memphis, Tennessee, to meet with Ervin because he was in trouble and people were waiting for him there. Ervin believed Burnette and agreed to deliver the marijuana at Shakey's. Agent Oakes and several other agents were present. Burnette parked his car at a conspicuous point in the parking lot, and was "wired for sound" with a small transmitter.
At approximately 4:30 p.m., defendant Ervin arrived and parked his car, a white Honda, next to Burnette. Ervin displayed to Burnette a grocery sack containing marijuana, whereupon the latter exited his car in order to obtain money for the purchase.[1] This was a pre-arranged signal for the narcotics agent to move in and arrest Ervin. As the arrest was made, the agent simply reached into the back seat of Ervin's car and picked up three more grocery sacks suspected of containing marijuana which were very similar to the one Ervin displayed to Burnette moments earlier.
Ervin was indicted by the DeSoto County grand jury during the April term of 1981. He was charged with possession with the intent to deliver a controlled substance identified in the indictment as more than one (1) kilo of marijuana. Honorable Andrew Baker, Circuit Judge of DeSoto County, transferred the cause to the County Court on June 8, 1981.
Ervin made a pre-trial motion for discovery of all items seized intended for use as evidence, exculpatory evidence, Ervin's criminal record, any statements Ervin may have made and any and all records of offense or arrest. He also gave notice of his intent to plead not guilty by reason of *132 entrapment. The state answered with a list of six witnesses, and its intention to introduce the seized marijuana. Continuances were granted and the trial date was re-set on Ervin's motions. Subpoenas were issued for all witnesses of the state to appear for trial on August 25, 1981, upon which date the trial began.
State's first witness was an agent of the Mississippi Bureau of Narcotics, Richard Oakes, who testified to the nature of the investigation. Agent Oakes further testified that he offered no promises of leniency to Burnette, that he observed Billy Ervin arrive and take a brown paper bag out of his car within two minutes after his arrival at Shakey's Pizza Parlor on the day in question. Oakes testified that he believed the substance in all the confiscated grocery sacks to have been marijuana based upon his experience and training as a narcotics' officer.
Ervin moved, outside the jury's presence, to suppress the three bags which were confiscated from the back seat of his Honda automobile.[2] Agent Oakes testified in chambers that he had looked inside Ervin's car through the window, that the bags were in plain view, and that he reached into the car and took them. Ervin then argued three United States Supreme Court cases decided prior to United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), in support of his suppression motion on the ground that the bags were afforded full protection under the Fourth Amendment and they should not have been opened without a warrant since they were not seized pursuant to arrest. The motion was overruled.
The state's expert witness, Joe Lee Williams, a forensic scientist with the Mississippi Crime Laboratory, testified that the substance found in the grocery bags was Cannabis Sativa L, based upon the tests he ran. Williams opined that the World Health Association was correct in holding that there was only one species of marijuana with several varietals. He noted that his tests resulted in positive detection of Cannabidial Tetrahydrocannabinol and cannabinol.[3] Williams would not agree that he could have been fooled by some non-cannabis plant being present and giving false positive results. He explained this fully. At the end of Williams' testimony, Ervin again moved to exclude the three bags of substance taken from his car. The motion was again denied.
Ben David Burnette was the next state's witness. He testified that he had a job, was attempting to straighten out his life and that he decided to cooperate with law enforcement officers out of fear of a long term in jail. He hoped the information he gave would influence any future sentence he might receive. Then he detailed the steps leading up to the arrest of defendant Billy Ervin. On cross-examination, Burnette testified as to his various places of residence and employment over the past five years, his arrest record, his failure to file tax returns, and his past dealings with Ervin. He stated that he had arranged for a friend to buy marijuana from Ervin. Ervin's attorney steered away from this topic apparently being cautious not to torpedo his entrapment defense with predisposition testimony. Nevertheless, the state asked Burnette on redirect to tell when this transaction took place. Burnette recounted two occasions within the past three years, and stated that it had been wrapped in grocery sacks similar to those confiscated in this case.
On recross, Ervin's attorney asked Burnette if he knew one Todd Cameron. Burnette replied affirmatively and stated that Cameron was a seller of drugs inferring "pot" and other controlled substances. Burnette was then asked when he had taken Cameron to see Ervin. This line of questioning was allowed over objection. *133 Ervin's attorney then established through Burnette that Cameron could have been subpoenaed for this trial because he had since been arrested by agents of the Mississippi Bureau of Narcotics. Objection to this line of questioning being outside the scope covered on redirect was sustained. Ervin kept attempting to establish that the state knew Cameron's whereabouts but failed to call him as a witness and the court took up the matter in chambers.
Ervin's attorney claimed surprise at Burnette's being called as a witness. He noted that Burnette's name was not indicated on the response to discovery, or the indictment, and demanded that a copy of Burnette's statement which he must have made to narcotics agents when he was arrested, be provided by the state in an effort to show its inconsistency with current testimony. The state knew of no such statement of Burnette, and noted that all references to past dealings with Billy Ervin had come out on cross-examination. The court ruled that recross should cease, that the motion to produce a statement would be taken under advisement, and that any objection to Burnette's testifying should have been made before he took the stand.
Three other agents of the Mississippi Bureau of Narcotics testified to the operation which resulted in Ervin's arrest. They each identified him. One of the agents knew who Todd Cameron was and that he dealt in drugs, inferring controlled substances.
Court was then recessed and the matters continued in chambers where Ervin's attorney was allowed to further question Burnette about his having given a written statement when he was arrested. Burnette stated that he had spoken into a tape recorder, and what he said was written out. Ervin's attorney moved to have the statement presented in order to clarify the issues of predisposition on Ervin's part to commit the crime. He asked to talk to Agent Oakes in chambers also, and the court agreed. Ervin's attorney also established that he had attempted to get a statement from Burnette prior to trial himself, but that Burnette had refused on advice of counsel.
Agent Oakes, in chambers, denied that he had taken a written statement from Burnette concerning Billy Ervin. He acknowledged that Todd Cameron was also named by Burnette at that time, that Cameron was subsequently arrested in possession of 125 pounds of marijuana and a case was made against him. Ervin's attorney then relented on his request for the statement since Agent Oakes denied that it existed. Motion for judgment of acquittal was made on the grounds of entrapment, insufficient evidence, and the unconstitutionality of Mississippi Code Annotated § 41-29-105, (r), (1972, as amended). Motion was denied on all grounds except the constitutionality of the statute which was taken under advisement.
Billy Ervin took the stand and testified as to his own character and lack of any predisposition to have sold drugs to Burnette, but for Burnette's persistence and his claims of being in trouble and needing help. He denied ever having sold marijuana to any friends of Burnette, and stated that he was a carpenter, earning ten dollars per hour as well as holding down odd jobs.
On cross-examination, Ervin admitted procuring the marijuana for Burnette, and that he would clear $400 on the deal. He acknowledged his own record regarding a prior conviction in 1971 for marijuana possession, but he denied a 1974 conviction for cocaine possession.[4] His father and employer testified of his good reputation.
Ervin's first argument is that the trial court erroneously rejected his entrapment instruction. The issue is: Did the testimony in the record support entrapment as the defense. Boone v. State, 291 So.2d 182, 185 (Miss. 1974). We have stated if the record failed to support a prima facie case of entrapment, then the trial court did not *134 err in refusing to submit the issue to the jury. Tribbett v. State, 394 So.2d 878 (Miss. 1981); Jones v. State, 285 So.2d 152 (Miss. 1973). In his brief, Ervin asserts, "Entrapment has ancient Biblical roots." Then he quotes Mother Eve as having said, "The serpent beguiled me, and I did eat, Genesis 3:13."
Ervin's position is that the actions of Burnette, calling several times, claiming he was in trouble, which he was, and begging for assistance while acting in concert with narcotics officers constituted government action meriting a finding of entrapment as a matter of law. The facts in Tribbett, supra, are substantially the same as here. Tribbett, authored by Justice Roy Noble Lee, pointed out that one is not excused from selling contraband simply because an informer requested him to do so.
Was this a trap for an unwary innocent? Sylar v. State, 340 So.2d 10 (Miss. 1976), established entrapment as a matter of law in controlled substance cases in Mississippi requiring participation in the law violation by law officers or that the contraband be furnished by law enforcement officers. This did not occur in the instant case which is factually very similar to Tribbett. Ervin knew where to get marijuana, had the means to obtain it, and did so to his detriment. He was asked to sell the substance and he was caught. No one coerced or otherwise forced him to drive to the state line on the day in question and deliver the substance to Burnette. The record shows that he did so because Burnette asked him and because he might clear $400 on the deal  his actions were those of an unwary criminal. His conviction was within the holdings of the following cases: United States Supreme Court opinions on entrapment, Hampton v. United States, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); and Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). Examples of true cases of entrapment are found in Daniels v. State, 422 So.2d 289 (Miss. 1982), where undercover agent furnished the pills sold by the defendant; and in Epps v. State, 417 So.2d 543 (Miss. 1982), where the defendant was instructed to and did "hold some cocaine" left with him by a confidential informant.
Mississippi follows the rationale of the defendant's predisposition in determining whether entrapment occurred. It is an affirmative defense, and the defendant must first show evidence in support of the defense. Alston v. State, 258 So.2d 436 (Miss. 1972). Then it becomes the state's burden to show predisposition on the part of the defendant.
Burnette testified to two instances of prior dealing which were denied by Ervin and Ervin's father. The state showed two instances where Ervin was convicted for possession of controlled substances. Ervin knew where he could obtain marijuana, and did so, admittedly knowing this to be a violation of the law. We conclude that the record did not support the request that the issue of entrapment be presented to the jury and no error occurred when the trial judge refused to do so.
Second argument is that reversal is warranted because the state, without obtaining a search warrant for three bags of marijuana, took them from Ervin's car after he was already under arrest. This argument lacks merit pursuant to United States v. Ross, supra. Ross makes it clear that where, as in the instant case, "probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." In Ross, police acted on a tip by an informant to locate and apprehend the suspect. They searched his car without a warrant on two occasions, finding currency and contraband. Ross sought to suppress the items because they were not taken pursuant to an actual arrest and because they were inside containers and protected under the Fourth Amendment. Ross contended that he had a reasonable expectation of privacy with regard to the containers and that they should not have been opened without a warrant.
*135 In clarifying the "container confusion" created by several previous holdings, the court in Ross applied the "object of the search test." The high court ruled that pursuant to a lawful arrest, officers may conduct a warrantless search of every part of a vehicle believed to contain contraband, including all containers and packages which may concern the object of the search and regardless of its "durability" or similarity to personal luggage.
Furthermore, the Court issued its well reasoned clarification in this area of the law. It stated:
Police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it may conduct a warrantless search of the vehicle that is as thorough as a magistrate could authorize by warrant.
456 U.S. at 800, 102 S.Ct. at 2159, 72 L.Ed.2d at 577.
Of course, a magistrate, in issuing a search warrant, would particularly describe the place to be searched and the person or thing to be seized. Thus, in accord with Ross, police officers who were seeking paper bags likely to contain five pounds of marijuana each in a Honda Civic automobile have authority to search the entire vehicle and any packages or containers which may conceal the object of the search even after the driver or occupant of the vehicle has been arrested.
In the instant case, Ervin had stated that he could obtain fifteen or twenty kilos of marijuana. Informant Burnette knew from their past dealings that it would be contained in paper bags. Ervin had told Burnette the type of car he would be driving. Upon arresting Ervin while he delivered one sack of contraband to the informant, police could then search his entire vehicle, which was believed to contain contraband. Three more bags of contraband were obtained from the back seat of the car during the search. Nothing unreasonable attended the way the search was conducted and, pursuant to Ross, supra, seizure of the three bags and placing them, together with their contents, into evidence was not reversible error. Upon the facts set forth hereinabove, there was present "probable cause" within the meaning of Ross, and no reversible error in this feature of the present case. See also, New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); Sanders v. State, 403 So.2d 1288 (Miss. 1981); and Horton v. State, 408 So.2d 1197 (Miss. 1982).
Third argument relates to the trial court's failure to exclude the testimony of the state's expert witness. Ervin states that the expert was a chemist, not a botanist, and was not qualified to state the kind of plant or substance taken from Ervin. Testimony of the expert was that his test revealed the presence of tetrahydrocannabinol (THC) a controlled substance under Mississippi Code Annotated § 41-29-113 (1972, as amended). Marijuana, Cannabis Sativa L., is the type plant which contains this substance. The Court found this to be a proper inference for the expert to convey. Even if THC were not a controlled substance, the fact that the plant that contained it, marijuana, could be identified as such by a chemist running a THC test was sufficient to establish what it was that Ervin had in his possession at the time in question. No authority is cited to support the contention that only one skilled in plant classification could testify as to what the substance was.
Fourth argument is that the trial court erred in its refusal to instruct the jury that they might infer from Todd Cameron's absence that his testimony would not support contentions made by the state about visits to Ervin's residence in the past to purchase drugs. Henderson v. State, 367 So.2d 1366 (Miss. 1979), held that the trial court should give no such instruction to a jury in a criminal trial. Instead, it would be the duty of the defense attorney to point this out in closing argument, which is precisely what the record shows that Ervin's attorney did in this case.
Last argument is that the trial court erred in its failure to declare unconstitutional Mississippi Code Annotated *136 § 41-29-105 (1972, as amended), which is the "definition" portion of the Poisons and Controlled Substances statute. Ervin maintains that to declare all species of cannabis plants to be illegal controlled substances is overbroad and vague. This would imply either that Ervin must have been under the impression at the time in question that what he had in his possession was not a substance controlled by statute or that the state could not prove that what Ervin had in his possession was a controlled substance.
The statute reads:
(r) "Marihuana" means all parts of the plant of the genus Cannabis and all species thereof, whether growing or not, the seeds thereof, and every compound, manufacture, salt, derivative, mixture or preparation of the plant or its seeds, excluding hashish.
Correctly the state's brief notes that the interpretation of statutes is a matter of law, not science. The statute in question declares all species of the plant in question to be within the category of controlled substances which makes it clear that possession of marijuana, per se, in the requisite amount would be unlawful. Certainly this record does not support any contention that Ervin was surprised by a vague statute. The proscription of all species can only clarify the issue and avoid complicated testing and proof as to what species might be in a defendant's possession at any particular time.
No reversal error has been shown and we, therefore, must affirm.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
NOTES
[1] Burnette had agreed to a price of $345 per pound.
[2] This type car is nearly all passenger compartment with a closed area for spare tire storage. The bags were on the back seat.
[3] Marihuana and tetrahydrocannabinol are defined as controlled substances under Schedule I, Mississippi Code Annotated § 41-29-113 (1972, as amended). All salts and isomers are included unless specifically excepted.
[4] The state presented a rebutal witness who produced a record of Ervin's 1974 conviction for cocaine possession.