# IN THE COURT OF APPEALS
# OF THE
# STATE OF MISSISSIPPI

## NO. 97-KA-00688-COA

**ALFRED MCCOLLUM**                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                               **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/21/1997 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | COVINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LESLIE D. ROUSSELL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MICHAEL C. MOORE |
| | BILLY L. GORE |
| | WAYNE SNUGGS |
| DISTRICT ATTORNEY: | DEWITT L. FORTENBERRY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF SALE OF COCAINE AND SENTENCED TO NINE YEARS IN MDOC |
| DISPOSITION: | AFFIRMED - 04/20/1999 |
| MOTION FOR REHEARING FILED: | 5/3/99 |
| CERTIORARI FILED: | 7/20/99 |
| MANDATE ISSUED: | 7/20/99 |

EN BANC:

KING, J., FOR THE COURT:

¶1. Alfred McCollum a/k/a Alfred McCullum was convicted of sale of cocaine and sentenced to serve a term of nine years in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction and sentence, McCollum has appealed and assigned four errors:

**I. WHETHER THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY REFUSING**

**TO ALLOW THE JURY TO RECEIVE THE PROPOSED JURY INSTRUCTION ON ENTRAPMENT WHICH WAS SUBMITTED TO THE COURT.**

**II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO GIVE THE DEFENDANT'S REQUESTED INSTRUCTIONS ON THE LESSOR-INCLUDED OFFENSE OF POSSESSION OF A CONTROLLED SUBSTANCE.**

**III. WHETHER THE TRIAL JUDGE ERRED WHEN HE OVERRULED THE DEFENDANT'S OBJECTION TO THE ENTRANCE INTO EVIDENCE OF ALLEGED CRACK COCAINE WHEN THE STATE FAILED TO ESTABLISH A LEGAL AND SUFFICIENT CHAIN OF CUSTODY AND WHERE THERE WAS REASON TO SUSPECT THE VALIDITY OF THE EVIDENCE.**

**IV. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO GIVE JURY INSTRUCTION D-5 WHICH WAS SIMPLY A BOILER PLATE STATEMENT OF THE LAW.**

¶2. Finding no error, this Court affirms the circuit court judgment.

## FACTS

¶3. Officer Wayne Muscio, an undercover narcotics agent,and Sergeant Dan McIntosh, both employees of the Collins Police Department, organized and participated in drug sting operations in Collins, Mississippi. Officer Muscio performed as an undercover buyer of drugs. Sergeant McIntosh was responsible for setting up video and audio surveillance equipment in Officer Muscio's vehicle.

¶4. On May 27, 1996, Officer Muscio, posing as a drug purchaser, arrived at a Chevron service station in Collins, Mississippi. He drove his truck, which had been equipped with video and audio surveillance equipment, close to one of the station's gas pumps. Shortly thereafter, McCollum arrived and parked his car near the same gas pump. Officer Muscio stated to McCollum, "I been looking for you. Do you have a twenty?" McCollum responded, "Yes." McCollum then drove out of the service station parking lot to a laundrymat around the block. Officer Muscio followed in his truck.

¶5. When the two arrived at the laundrymat, McCollum got out of his car and walked over to Officer Muscio's truck. McCollum handed him a $20 unit rock of cocaine and Officer Muscio handed McCollum a twenty dollar bill. After the transaction was completed, both men left the area. The video equipment in Officer McCollum's truck recorded the transaction.

¶6. Officer Muscio went to a prearranged spot to meet Sergeant McIntosh. He put the rock of cocaine in a

plastic bag, and initialed and dated the bag. Sergeant McIntosh was then given the bag, which he signed and delivered to the Mississippi Crime Lab.

¶7. Kevin Cole, a forensic scientist employed by the Mississippi Crime Lab, retrieved the bag from the lab vault and performed an analysis on the bag's content. After performing ultraviolet spectrophotometry and mass spectrometry testing on the contents of the bag, he determined that it was cocaine.

¶8. McCollum was subsequently indicted for the sale of cocaine. A trial was held and the jury convicted him of this charge. McCollum's motion for new trial and judgment notwithstanding the verdict having been denied, he now appeals his conviction and sentence.

## ISSUES

## I. WHETHER THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY REFUSING TO ALLOW THE JURY TO RECEIVE THE PROPOSED JURY INSTRUCTION ON ENTRAPMENT WHICH WAS SUBMITTED TO THE COURT.

¶9. In his first assignment of error, McCollum contends that the trial court improperly denied his jury instruction on entrapment.

### Law

The defense of entrapment is available where criminal intent did not originate in the mind of the accused, or stated differently, where the accused was not predisposed to commit the crime. Where, however, the intent to commit the crime already existed in the mind of the accused so that the inducement merely served to give him an opportunity to commit that to which he was already disposed, the entrapment defense does not lie.

*King v. State*, 530 So.2d 1356, 1358 (Miss.1988) (citations omitted).

### Analysis

¶10. "Mississippi follows the rationale of the defendant's predisposition in determining whether entrapment occurred. It is an affirmative defense, and the defendant must first show evidence in support of the defense. Then it becomes the state's burden to show predisposition on the part of the defendant." *Ervin v. State*, 431 So.2d 130, 134 (Miss.1983).

¶11. McCollum admitted having sold rock cocaine to Officer Muscio, but denied having a predisposition to the sale. He argues that but for Officer Muscio's several attempts to have conversations with him about wanting to buy drugs, he would not have sold the cocaine. According to McCollum, the cocaine was intended for his personal consumption rather than for distribution.

¶12. A review of the record reveals that the State introduced into evidence a videotape which captured McCollum's actions and demeanor while transacting the sale of cocaine to Officer Muscio. The videotape evinced McCollum's ready commission of the crime which amply demonstrated his predisposition to the sale of cocaine. *Johnston v. State*, 93-KA-01418-SCT, p.14 (Miss.Sup.Ct.1997). McCollum's

testimony regarding his frequent purchase, possession and use of cocaine also established his predisposition regarding drug statutes. *Id*.

¶13. Considering the previous evidence, this Court finds that there was sufficient evidence to support McCollum having a predisposition to the sale of cocaine. *Id.* Because McCollum exhibited this predisposition, the trial judge did not err in refusing to grant an instruction on entrapment. *King,* 530 So.2d at 1358.

## II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO GIVE THE DEFENDANT'S REQUESTED INSTRUCTIONS ON THE LESSOR-INCLUDED OFFENSE OF POSSESSION OF A CONTROLLED SUBSTANCE.

¶14. In his second assignment of error, McCollum contends that the evidence supported the granting of lesser-included offense instructions on possession of a controlled substance.

### Law

[T]here must be evidentiary proof in the record to support a defendant's entitlement to a lesser-included offense instruction. *Johnston*, 93-KA-01418-SCT, p.15 (Miss.Sup.Ct.1997).

### Analysis

¶15. McCollum admitted to the sale of cocaine during both direct and cross-examinations. His actions clearly did not amount to mere possession and therefore, he was not entitled to jury instructions in this regard.

## III. WHETHER THE TRIAL JUDGE ERRED WHEN HE OVERRULED THE DEFENDANT'S OBJECTION TO THE ENTRANCE INTO EVIDENCE OF ALLEGED CRACK COCAINE WHEN THE STATE FAILED TO ESTABLISH A LEGAL AND SUFFICIENT CHAIN OF CUSTODY AND WHERE THERE WAS REASON TO SUSPECT THE VALIDITY OF THE EVIDENCE.

¶16. The State presented several witnesses to establish a proper chain of custody of the crack cocaine. Officer Muscio testified that after he received the crack cocaine from McCollum, he placed it into a plastic bag, and initialed and dated the bag. Officer McIntosh received the plastic bag from Officer Muscio, signed the plastic bag and then delivered it to the Mississippi Crime Laboratory. Kevin Cole testified that Christy West received the plastic bag at the Mississippi Crime Laboratory and thereafter, he removed it from a vault in the lab.

¶17. In his third assignment of error, McCollum contends that the chain of custody was not complete. No evidence was presented to establish that Ms. West placed the plastic bag into the vault, or whether she gave it to another person to place it into the vault. He questions the handling of the substance prior to being tested or whether it was the same substance. Further, he argues that because the Mississippi Crime Laboratory had been investigated for invalid results when testing for controlled substances, there was reason to suggest that McCollum's test results were untrustworthy.

## Law

[T]he test for the continuous possession [i.e., "chain of custody"] of evidence is whether or not there is any indication or reasonable inference of probable tampering with the evidence or substitution of the evidence . . . and the burden to produce evidence of a broken chain of custody (i.e., tampering) is on the defendant.

*Hemphill v. State*, 566 So.2d 207, 208 (Miss.1990) (citations omitted).

## Analysis

¶18. The State established a sufficient chain of custody. The plastic bag and its contents were properly handled when taken into the possession of Officers Muscio and McIntosh, and Kevin Cole. Although evidence was not presented to establish who placed the plastic bag into the vault, McCollum failed to support his suggestions that these items may have been tampered with or substituted prior to being placed into the vault. Considering McCollum's admission on several occasions that the substance in question was indeed cocaine, this Court finds no merit in his argument on appeal.

## IV. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO GIVE JURY INSTRUCTION D-5 WHICH WAS SIMPLY A BOILER PLATE STATEMENT OF THE LAW.

¶19. In his final assignment of error, McCollum contends that the trial court erred when failing to grant defense jury instruction D-5. This instruction read as follows:

The Court instructs the jury that if you find that the State has failed to prove any one of the elements of the alleged crime beyond a reasonable doubt then you must return a verdict in favor of the defendant. You may return that verdict on a separate sheet of paper which states, "We the jury find the Defendant Not Guilty."

## Law and Analysis

¶20. The trial judge denied Instruction D-5. He determined that the language included in this instruction, though in accordance with the law, was repetitious and adequately presented in other instructions. This Court agrees. State Instructions S-3 and Defense Instructions D-4 and D-11[1] properly defined the elements of the crime of sale of cocaine, and stated the State's burden of proving each element beyond a reasonable doubt to establish guilt. This Court will not reverse for denial of an individual instruction when the jury has been instructed properly and fully by the instructions considered as a whole. *Catchings v. State*, 684 So.2d 591, 599 (Miss.1996).

¶21. Finding no error, this Court affirms the circuit court judgment.

¶22. **THE JUDGMENT OF THE COVINGTON COUNTY CIRCUIT COURT OF CONVICTION OF SALE OF COCAINE AND SENTENCE OF NINE (9) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COVINGTON COUNTY.**

**McMILLIN, C.J., BRIDGES, DIAZ, LEE, PAYNE, AND THOMAS, JJ., CONCUR.**

**COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P. J., AND IRVING, J.**

COLEMAN, J., DISSENTS:

¶23. Because I find McCollum's testimony sufficient to support his defense of entrapment, I respectfully dissent. The Mississippi Supreme Court explicated the defense of entrapment in *Walls v. State*, 672 So. 2d 1227, 1230-31 (Miss. 1996), and I quote, perhaps too extensively, from that opinion preparatory to designating the portions of McCollum's testimony which I submit would have supported the trial court's granting McCollum's instruction on entrapment which McCollum requested:

¶24. Mississippi's law on entrapment is well-settled:

> Entrapment has been defined as "the act of inducing or leading a person to commit a crime not originally contemplated by him, for the purpose of trapping him for the offense." The defense of entrapment is affirmative and must be proved by the defendant. If the defendant already possesses the criminal intent, and the request or inducement merely gave the defendant the opportunity to commit what he or she was already predisposed to do, entrapment is not a defense.
>
> * * * * * *
>
> Before a defendant can raise the defense of entrapment, he or she is required to show evidence of government inducement to commit the criminal act and a lack of predisposition to engage in the criminal act prior to contact with government agents.
>
> (citations omitted).
>
> . . . .
>
> Once the defendant makes out a prima facie case that he was entrapped, three consequences follow: First, the burden of production and proof shifts to the prosecution. Second, predisposition becomes a fact of consequence and evidence thereof becomes relevant and, hence, always admissible. Third, *the accused becomes entitled to have the defense of entrapment submitted to the jury on proper instructions*.

*Id*.

¶25. The supreme court then provided the following standard of review for determining whether an accused is entitled to present the defense of entrapment to the jury for its consideration:

> [W]hether the entrapment defense should be submitted to the jury depends upon whether there is credible evidence in the record supporting such a defense.
>
> * * * * * *
>
> Our question then is whether there was sufficient evidence in the record that a rational jury might have found for [the appellant] on the entrapment issue.

(citations omitted).

¶26. To support my reason for dissenting, which is that McCollum's testimony was sufficient to support a "rational" jury's finding for him on the entrapment issue as required by the previously quoted standard of review, I offer the following excerpts from McCollum's testimony on direct examination:

Q. Do you recall the first time you saw Wayne Muscio that day?

A. Yes, sir.

Q. Tell the jury when you saw him and what transpired?

A. Okay. I was coming out of this certain community in Collins. I had $10.00 left. I bought an $8.00 dollar piece of crack cocaine, and I was going to put $2.00 worth of gas in my car and go home. So, while I was pulling out of this community, he stopped me and asked me about drugs, which I had never seen this guy before. And he got to telling me . . . . about how, you know, he had been over in this community and other guys had been ripping him off of money and selling him wax and soap. And I felt sorry for him because I was a drug addict, and I work hard for my money. If I want to buy some drugs, I want to make sure they [are] drugs. And so, I told him, no, I didn't know no drugs was. So, I left there and I went to Jr. Food Mart, and he followed me up to Jr. Food Mart. I had no intent of selling this guy any drugs, you know, because he come to me saying he had been ripped off and guys had been, you know, stealing money from him. I'm not prejudiced. If I can help anybody, I'm going to help them out.

. . . .

I told him I didn't know where none [dope] was because I, you know, I hadn't seen him. I didn't know him, you know. He kept begging me and following me all the way to Jr. Food Mart. I don't know this guy.

Q. Would you have sold it to him if you had known him?

A. No. I don't sell cocaine. I smoke cocaine. I work for a living. I'm not a drug dealer.

¶27. As the majority opinion recites, the officers had made a videotape of the transaction between McCollum and the undercover narcotics officer, Wayne Muscio, which occurred at a service station in Collins. McCollum's counsel questioned McCollum about what the videotape, when played, portrayed:

Q. Okay. So, you pulled into the gas station and you saw that on the tape; is that correct?

A. Yes, sir.

Q. And what happened?

A. Well, I was going to the gas pump to get some gas to go on home with and he stopped me again, you know. He just, like I say, was following me. I had no intention of selling this guy no drugs. He just, you know, kept asking me and begging me telling me about how, you know, other people had ripped him off.

Q. Do you recall what the first thing said was between the two of you?

A. Well, when he flagged me down at the service station talking about he had been looking for me, which he couldn't have been looking for me because I had never seen him before. Me and him had had no conversation about any drugs, you know, until then. I don't know him. And like I said, I'm not prejudice [sic], you know. I thought he was an addict like I was, you know. If you go buy some dope and somebody steals your money, that hurts you, and that's what he had been telling me they had been doing.

¶28. When his counsel asked McCollum, "Is there any other reason why you would have gave [sic] him that $8.00 piece of cocaine for $20.00?," McCollum replied:

No reason. I would have smoked it myself. If he hadn't stopped me and kept begging and saying, you know, he needed it, I wouldn't have sold him that dope because like I said, I smoke dope. All the dope that I can get my hands on I smoke it myself, and I buy it with my own money. I'm not a drug dealer.

¶29. McCollum further testified that when he was arrested, he "had been on that job for two and a half years for Delco Ltd. in Raleigh, Mississippi." He admitted that his employer terminated him after he had been incarcerated in the county jail. McCollum never denied that he sold Officer Muscio the single rock of cocaine for $20.00.

¶30. My colleagues in the majority conclude "that there was sufficient evidence to support McCollum['s] having a predisposition to the sale of cocaine," and, therefore, "[b]ecause McCollum exhibited this predisposition, the trial judge did not err in refusing to grant an instruction on entrapment." (Majority opinion, p. 4). I do not disagree that "there was sufficient evidence to support McCollum's having a predisposition to the sale of cocaine," but with deference to my colleagues in the majority, I submit that McCollum's testimony, which I have quoted, was also sufficient for "a rational jury [to] have found for [McCollum] on the entrapment issue." *See Walls*, 672 So. 2d at 1230.

¶31. "A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict." *Gandy v. State*, 373 So.2d 1042, 1045 (Miss.1979). In *Dabney v. State*, the Mississippi Supreme Court held that "if there was evidence to warrant the giving of the lesser included offense instruction, then it should have been given, *even if the greater weight of the evidence supported the greater offense.*" *Dabney*, 717 So. 2d at 737 (citation omitted) (emphasis added). Of course, the issue of whether to grant an instruction on entrapment is not the issue of whether to give a "lesser included offense instruction." However, if the supreme court has opined that "if there was evidence to warrant the giving of the lesser included offense instruction, then it should have been given, even if the greater weight of the evidence supported the greater offense," then I remain of the opinion that because McCollum's testimony was sufficient to support the granting of an entrapment inspection, the trial court erred by failing to grant McCollum's requested instruction on entrapment, even if it might appear to this Court that "the greater weight of the evidence" "support[ed] McCollum['s] having a predisposition to the sale of cocaine." Thus, I would reverse the trial court's judgment of McCollum's conviction of the sale of cocaine and remand this case to the trial court.

**SOUTHWICK, P.J. AND IRVING, J., JOIN THIS OPINION.**

1.State Instruction S-3, and Defense Instructions D-4, and D-11 read as follows:

Instruction S-3

The Court instructs the jury that if you find the defendant, Afred McCollum, guilty of transfer of cocaine, then your verdict may be written on a separate sheet of paper, need not be signed, and may be in the following form:

"We, the jury, find the defendant, Alfred McCollum, guilty of transfer of cocaine."

The Court instructs the jury that if you find the defendant, Alfred McCollum, not guilty then your verdict may be written on a separate sheet of paper, need not be signed, and may be i the following form:

"We, the jury, find the defendant not guilty."

Instruction D-4

The Court instructs the jury that the law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State the burden of proving the defendant guilty of every material element of the crime with which he is charged. You shall not return a verdict of guilty, unless the State proves beyond a reasonable doubt that the defendant is guilty of each and every single element of the crime as charged in the indictment. The presumption of innocence attends the defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of the defendant's guilt beyond a reasonable doubt. The defendant is not required to prove he is innocent.

Instruction D-11

The Court instructs the Jury that the defendant has been charged with the crime of transfer of a schedule II controlled substance, to-wit, cocaine. The State must prove to you each and every single element of the crime as laid out by statute and in the indictment herein; if the State fails to prove to you, beyond a reasonable doubt, any one of the elements of transfer of a schedule II substance, to-wit, cocaine, then you shall find the defendant not guilty.

For the purposes of this case the state must prove each and every one of the following elements to you beyond a reasonable doubt:

1. That on May 27, 1996;

2. Alfred McCollum transferred a substance to Wayne Muscio; and

3. That said substance was a schedule II controlled substance; and

4. Said substance was cocaine; and

5. All of this took place in Covington County, Mississippi,

otherwise, you shall find the defendant "not guilty".