# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI

### NO. 97-KA-01429-COA

**ELBERT LEE WILLIAMS A/K/A AL WILLIAMS**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/16/1997 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | HENRY PALMER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  MICHAEL C. MOORE |
| | BILLY L. GORE |
| DISTRICT ATTORNEY: | BILBO MITCHELL, III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | COUNT I TWO YEARS TO SERVE IN CUSTODY OF MDOC, PAY $1,000 FINE, $400 APPEARANCE BOND FEE AND COURT COSTS OF $246. COUNT II EIGHT YEARS TO SERVE IN CUSTODY OF MDOC, PAY A FINE OF $3,000, $400 APPEARANCE BOND FEE AND COURT COSTS OF $246. SENTENCES TO RUN CONSECUTIVELY. |
| DISPOSITION: | AFFIRMED - 05/04/99 |
| MOTION FOR REHEARING FILED: | 5/17/99 |
| CERTIORARI FILED: | 7/13/99 |
| MANDATE ISSUED: | |

EN BANC.

IRVING, J., FOR THE COURT:

¶1. On November 19, 1996, Elbert Williams was charged by separate indictments in Lauderdale County

for the sale of marijuana on two different occasions: June 21 and 27, 1996. By agreement, the indictments were consolidated for trial, and he was convicted of marijuana sale on both occasions. He has appealed his convictions to this court raising four issues which we quote directly from his brief:

**1. The evidence offered through Agent Butler concerning predisposition was stale, irrelevant, prejudicial, in violation of discovery and resulted in the defendant receiving an unfair trial.**

**2. The Court's comment that the defendant could call a particular witness amounted to an improper shifting of burden of proof on the defendant and interfered with his constitutional right to a presumption of innocence.**

**3. The failure of the State to call Robert Pollard to contradict the entrapment defense of the defendant constitutes reversible error, amounting to the State not having met its burden in the trial.**

**4. The failure of the Court to instruct the jury on the issue of entrapment for the June 27th charge was improper since the series of events from June 21st through June 27th were one inexorably intertwined course of events that could not be separated and led to hopeless confusion on the part of the jury concerning the charge by the Court. This action denied the defendant a theory of defense on that issue.**

¶2. Finding no merit in the issues raised, we affirm Williams's convictions.

## I.

## Facts

¶3. Williams operated a business in Lauderdale County variously described as a bar or a night club that sold beer and snacks and contained coin operated pool tables. Because Williams sold beer in his establishment, the Alcohol Beverage Control (ABC) division of the Mississippi Tax Commission had occasion to check on Williams's activities. As a result of the ABC's oversight of Williams, Agent John Butler had received information in December 1994 from Robert Pollard, a confidential informant, that marijuana was being sold at Williams's club in the Whynot community. Pollard befriended Williams and, at the request of Karl Merchant, a detective with the Meridian Police Department on special assignment to the Meridian/Lauderdale County Drug Task Force, purchased with State funds, $150 of marijuana from Williams on June 20, 1996. This was considered an intelligence buy and was monitored by Merchant and a host of other agents. Merchant then arranged for Walter Martin, an undercover agent with the Southeast Mississippi Drug Task Force, to purchase marijuana from Williams the following day. The next day Agent Martin and Pollard went to Williams's establishment, and Martin purchased three ounces of marijuana from Williams for $450. During this buy, Martin arranged with Williams to buy a pound of marijuana from Williams at a later date. On June 24, 1996, Pollard delivered two ounces of marijuana to Agent Martin which had been given to him by Williams for delivery to Martin. On June 26, 1996, Agent Martin met with Williams and paid him $300 for the two ounces which had been delivered by Pollard on the 24th. During the meeting on the 26th, Agent Williams discussed with Williams the possibility of buying a pound from him. Pursuant to this discussion, Agent Williams and Pollard met with Williams on the morning of the 27th. Williams advised that he did not have the pound at that time but told them to come back later and he would have it. Agent Martin came back later without Pollard to purchase the pound which had been promised by

Williams. Upon arrival, Williams had approximately 7.7 pounds of marijuana and explained that he would rather get rid of the larger amount. Agent Martin paid Williams $1,600, and Williams extended credit for the balance of the purchase price which was $9,750. On July 19,1996, Agent Martin arranged to pay Williams the $9,750 and ordered another five pounds for an additional $7,500. Initially, the task force, in consultation with the Attorney General, had decided to let the $9,750 walk in order to buy an even larger amount from Williams. However, the Attorney General later decided the State could not let that amount of money walk, and plans were made to pay Williams the $9,750 owed, buy the additional five pounds if Williams had it, and then move in and make the arrest. It turned out that Williams did not have the additional five pounds; however, he explained that he could get it later on that night. The agents decided they could not wait and take the chance of losing the $9,750. Thus, they paid Williams the $9,750 and made the arrest.

¶4. At trial, Williams admitted to his involvement in both sales but alleged that he was entrapped into participating in the transactions by Pollard, whose persistent inquiries finally led Williams to arrange a sale though he had no previous involvement in such matters and had no independent inclination to become involved in illegal narcotic sales.

¶5. Because we have concluded that there was ample evidence for the jury to find that Williams was predisposed to make the sales without the alleged inducement from the State, and that the erroneous admission of Williams's ten year old guilty plea to misdemeanor possession of marijuana was harmless error, as discussed below, we set forth his testimony in great length. Pertinent portions of Williams' testimony drive home the point:

Q. Okay. And when Walter Martin, the undercover officer, came in here and testified earlier that he never had to twist your arm, he never had to encourage you or talk you into making any of these sells, that's the truth, isn't it?

A. Yes, sir.

Q. That you willingly sold the dope to him?

A. Yes, sir.

Q. Okay. But, now you have also been in here when your lawyer has made these statements to the jury that you were entrapped, haven't you?

A. Yes, sir.

Q. And you understand that that's the defense that you are raising here, right?

A. Yes, sir.

Q. Okay. So you are saying then, that although Walter Martin didn't have to encourage you, that he didn't have to induce you or entice you and that he didn't have to make you sell him anything, you are still saying that you were somehow entrapped into selling this; is that right?

A. Yes, sir, through Robert Pollard.

Q. Well, I take it then, in these three or four or five times that you saw Robert Pollard, during those

times he must have threatened you. Did he threaten you?

A. No.

Q. He never threatened you?

A. No, sir.

. . .

Q. Well, you say it was through Robert Pollard, but you don't deny that on the 27th you provided it to him and Robert Pollard wasn't even there; isn't that right?

A. Well, yes, sir, that's right.

Q. Okay. And on the time previous, when you discussed buying 1 pound, that was a discussion between you and Walter Martin in the parking lot and Robert Pollard was in the business, right?

A. Yes, sir.

Q. He wasn't even there. That's right, isn't it?

A. That's right.

Q. Okay. So when you say it was through Robert Pollard, you have to be fair, you have to admit that Robert Pollard wasn't present on a couple of these sells, right?

A. That's right.

Q. Okay. So I return to my question. Why would you, why did you provide the marijuana to Walter Martin, a person you didn't know for very long and who was not a good friend of yours?

A. Well, they were operating together. That's the way I understood it.

Q. So your friendship, then, for Robert Pollard was so strong that you would supply marijuana to Walter Martin, a person that you didn't even know very well?

A. Yes, sir, through him.

Q. Okay. And just to be clear on this, even though it was your motivation in doing it, I understand from your testimony, you were motivated to do it by friendship?

A. Yes, sir.

Q. Okay, I understand that. But even though it was motivated by friendship, you got paid for it, didn't you?

A. Yes, sir.

Q. You made a profit on these deals, didn't you?

A. Yes, sir.

Q. So it wasn't just some charitable feeling you had for Robert Pollard that made you do this, was it?

A. No, sir.

Q. Well, returning to these meetings that you say occurred maybe as many as five times between you and Robert Pollard, and these were short in duration and they happened at your place of business? You said he never threatened you, right?

A. Yes, sir.

Q. Okay. Yes, he never threatened you?

A. Yes, sir.

Q. Okay. And you say, he never, he never offered you any kind of money, did he?

A. No, sir.

Q. Okay. So he didn't entice you with money?

A. No, sir. He was always asking for money, you know.

Q. He was the one who was wanting money, right?

A. Yeah.

Q. So he never offered you the inducement of money?

A. No.

Q. He never offered you any other kind of inducement, either did he? He didn't offer you, to get something else, did he?

A. No, sir.

Q. Okay. We have just about eliminated everything. If he didn't threaten you, he didn't offer to give you something, did he beg for it; is that what he did? Did he beg you to do it?

A. Well, he asked me, he asked me to do it.

Q. I understand he asked you to do it.

A. No, sir, he didn't beg me.

Q. I am just asking you -

A. No, he didn't beg me.

Q. What was it about Robert Pollard asking you to sell him marijuana that entrapped you into doing

something that you wouldn't have done otherwise? That is what I am asking you. He didn't beg you, though?

A. No, sir, he didn't beg me.

¶6. At another point, Williams testified:

Q. Okay. So it's accurate, what Walter Martin testified to, that he came in earlier in the evening, that day, on the 21st of June, 1996, with Robert Pollard and asked for three ounces of marijuana, right?

A. Yes, sir.

Q. Okay. And you told him that you could get him some, didn't you?

A. Yes, sir, I told him I would.

Q. Okay. Well, then, on that day, on the 21st of June, 1996, when he came in and asked for three ounces of dope that you told him that you could get for him, on that day, did either he or Robert Pollard or anybody else associated with the State of Mississippi, did any body [sic] at that time threaten you in any way?

A. No, sir.

Q. Okay. Did anybody, at that time, offer you anything in any way, if you would make that sell, other than purchase price?

A. No, sir.

Q. Okay. Did anybody, in any way, promise you any kind of favors or anything like that?

A. No, sir.

¶7. When Williams was asked whether his calling Aubrey Irby for dope was a shot in the dark, he answered, "Not really". The following colloquy, which occurred on cross-examination, is also noteworthy and telling:

Q. Okay. And you also said that the only reason that you sold undercover to Agent Martin that big block of marijuana on the 27th of June, 1996, is because that's the way Aubrey Irby sent it to you, right?

A. Yes, sir.

Q. Okay. And you said that that is, that Aubrey Irby told you that it was coming too often; is that right?

A. Yes, sir. Yes, sir, that's right.

Q. You need to explain that?

A. Yes, sir.

Q. You do need to explain it?

Q. No. No, I don't have to.

Q. Okay. Well, I take it from that statement that you mean that Aubrey Irby was dealing in such quantities of dope that he was getting too much of it at a time to deal with. Is that what you are saying?

A. Ask that question again.

Q. Well, when you say that Aubrey Irby was telling you that it is coming too often, that the dope was coming too often to Aubrey Irby, you mean that Aubrey Irby had so much marijuana that he just couldn't get rid of it? Is that what he was telling you?

A. I don't know what he was saying about it.

Q. Well, you took it that he was sending you nearly 7 and a half pounds of dope because it was coming to him too much; is that right?

A. I guess so.

¶8. The trial court granted Williams an entrapment instruction as to the first transaction, but found that there was no evidentiary basis to support an entrapment instruction on the second sale.

## II.

### First Issue: *Improper Introduction of Evidence Going to Predisposition*

¶9. Williams complains that the trial court erred in admitting evidence of a ten year old guilty plea to misdemeanor possession of less than an ounce of marijuana. He urges that the admission of this prior conviction was so prejudicial to his receiving a fair trial that we must reverse his convictions. The State offered the evidence for the purpose of demonstrating Williams's predisposition to traffic in illegal drug. Evidence tending to establish predisposition is admissible in a case where the defendant defends by claiming he was entrapped. *Sanders v. State*, 678 So. 2d 663, 668 (Miss. 1996).

¶10. We conclude that the trial court erred in admitting evidence of this earlier conviction. However, we also conclude its admission was harmless in light of the overwhelming evidence of Williams's predisposition to traffic in narcotics as revealed by Williams own testimony. Evidence erroneously admitted in a defendant's trial will not warrant reversal on appeal unless it can be said that the defendant was unduly prejudiced by its admission. We are of the firm conviction that Williams was not so prejudiced. In arriving at this conclusion, we are not unmindful of the fact that in addition to the admission of Williams's ten year old guilty plea to misdemeanor possession of marijuana, the trial court allowed into evidence the indictment which charged Williams with possession of marijuana with the intent to sale, though he pled guilty to misdemeanor possession.

¶11. Williams's case for entrapment boiled down to this: Robert Pollard, a friend of his for approximately a

month, asked him to sell some marijuana. He was asked four or five times by Pollard, and, at first, he declined. Pollard did not beg him. Nothing in the way of inducement was offered him. He finally agreed to do the transaction, selling first to Pollard, then to Agent Martin, a transfer to Pollard for Martin, and another sale to Martin with credit being extended to Martin for a portion of the purchase price.

¶12. The State's proof was that (1) in 1994, Agent Butler with the Alcohol Beverage Control division had received information from Robert Pollard that marijuana was being sold at Williams's club in the Whynot community, (2) immediately before the sales, which are the subject of these charges, took place, Robert Pollard purchased $150 worth of marijuana from Williams, (3) Williams was a very close friend of Audrey Irby, a person known to traffic in drugs, having been arrested in 1992 for growing marijuana on his farm in Clarke County, (4) Williams was asked, not begged, by Pollard to sell the marijuana to Agent Martin, (5) nothing was offered to Williams to get him to sell the marijuana other than the purchase price, (6) Williams willingly sold the marijuana that he got from Aubrey Irby.

¶13. In *Ervin v. State*, 431 So. 2d 130 (Miss. 1983) the Mississippi Supreme Court, in affirming the conviction of the appellant Billy R. Ervin who had asserted entrapment as a defense, opined:

> Ervin's position is that the actions of Burnette, calling several times, claiming he was in trouble, which he was, and begging for assistance while acting in concert with narcotics officers constituted government action meriting a finding of entrapment as a matter of law. The facts in *Tribbett*, authored by Justice Roy Noble Lee, pointed out that one is not excused from selling contraband simply because an informer requested him to do so.

*Ervin,* 431 So. 2d at 133. The *Ervin* court went on to note, "Ervin knew where to get marijuana, had the means to obtain it, and did so to his detriment. He was asked to sell the substance and he was caught. No one coerced or otherwise forced him to drive to the state line on the day in question and deliver the substance to Burnette. The record shows that he did so because Burnette asked him and because he might clear $400 on the deal--his actions were those of an unwary criminal". Id at 133-134. The same can be said of Williams in this case.

### III.

**Second Issue***: The comment by the Trial Court That the Defense Could Call a Witness*

¶14. Williams contends that the following colloquy between his counsel and the court amounted to an improper shifting of the burden or proof to him and also ran afoul of the presumption of innocence with which he was clothed:

> By the Court: This Agent Martin, I assume, will be here to testify?

> By Mr. Malta: Yes, sir.

> ****

> By Mr. Palmer: Judge, since you asked him that about Agent Martin, will you ask him that about Pollard, too?

> By the Court: Mr Palmer, you know Mr. Pollard is here.

By Mr. Palmer: Yes, sir, but I don't know whether he will call him or not.

By the Court: You can. Somebody can. He is here and available to be called by anybody. I don't know who is going to testify, but Mr. Pollard is available to testify.

¶15. This assignment of error is without doubt lacking in all merit.

## IV.

### Third Issue: *The Failure of the State to Call Robert Pollard, the Confidential Informant*

¶16. Williams, relying upon *Gamble v. State,* 543 So. 2d 184 (Miss. 1989), argues that he was entitled to a directed verdict. Williams's reliance on *Gamble* is misplaced. In *Gamble*, unlike here, the defendant testified that the confidential informer supplied the marijuana to the defendant for sale to the undercover agent. The State did not produce the confidential informant to contradict the defendant's testimony. Here, there is no testimony that the marijuana sold by Williams was supplied by the State. This assignment of error is without merit.

## V.

### Fourth Issue*: Failure of the Court to Instruct the Jury on Entrapment as to the June 27th Sale*

¶17. Williams contend that he should have received an entrapment instruction on the June 27, 1996 transaction because it was inexorable intertwined with the earlier transactions. Only after a *prima facie* case of entrapment has been made is a defendant entitled to an entrapment instruction. Entrapment is the act of inducing or leading a person to commit a crime not originally contemplated by him, for the purpose of trapping him for the offense. The defense of entrapment is affirmative and must be proved by the defendant. If the defendant already possessed the criminal intent, and the request or inducement merely gave the defendant the opportunity to commit what he or she was already predisposed to do, entrapment is not a defense. *Hopson v. State*, 625 So. 2d 395, 399 (Miss. 1993). First, it is clear from Williams's own testimony, as set forth in Part I of this opinion, that he was probably not entitled to an entrapment instruction as to the first transaction. However, having been granted one by the trial judge, it was then up to the jury to assess the weight to be given. But as to the second transaction, which occurred six days after the first, the record shows Williams to be a real dealer, offering to sell more marijuana than was requested and even selling it on credit. It is difficult to see how an innocent person, never having entertained the notion to sell narcotics could have become so embolden in six days. We affirm the trial court's denial of the entrapment instruction as to the second transaction.

¶18. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION OF COUNT I SALE OF MARIJUANA, MORE THAN AN OUNCE, FINE OF $1,000, AND SENTENCE OF TWO YEARS; COUNT II SALE OF MARIJUANA, OVER A KILOGRAM, FINE OF $3,000, AND SENTENCE OF EIGHT YEARS, SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.

**DIAZ, LEE, PAYNE, AND THOMAS, JJ., CONCUR. McMILLIN, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING AND SOUTHWICK, P.JJ., BRIDGES AND COLEMAN, JJ.**

McMILLIN, C.J., DISSENTING:

¶19. I respectfully dissent. In my view, the evidence of a ten year old marijuana possession conviction was not properly admitted to show predisposition to traffic in narcotics. Evidence of simple possession simply is not probative on the question of a propensity to actively traffic. This error might have been dismissed as harmless but for the fact that the trial court permitted introduction of the earlier indictment itself as a part of the evidence of the prior conviction. The indictment had charged Williams with the greater crime of possession with intent to distribute. An indictment is a mere charging instrument and provides not the slightest evidence of actual guilt of the charges contained in the indictment. *See Rainer v. State,* 438 So. 2d 290, 293 (Miss. 1983).

¶20. By introduction of this indictment, the State was improperly permitted to suggest to the jury that Williams had previously been involved in criminal drug trafficking when, in fact, there was absolutely no competent evidence available that this was the case.

¶21. A defendant claiming entrapment is entitled to try to convince the jury that he had no predisposition to engage in such criminal activity. Improperly admitted evidence strongly suggesting a long history of similar behavior must certainly be seen as critically affecting Williams's ability to pursue a legitimate defense to the charges against him. I would find the evidence so prejudicial to Williams's defense as to have the effect of denying him a fundamentally fair trial and would reverse and remand for a new trial where the evidence of this prior conviction was excluded. M.R.E. 103; *Tudor v. State,* 299 So. 2d 682, 685-86 (Miss. 1974).

**KING AND SOUTHWICK, P.JJ., AND BRIDGES, COLEMAN, JJ., JOIN THIS SEPARATE WRITTEN OPINION.**